**In the Matter of William F. NEALE, Sr., Bankrupt.**

**No. BK 3-408.**

United States District Court
N. D. Texas,
Dallas Division.

Oct. 6, 1967.

Thomas G. Crouch, Dallas, Tex., for trustee in bankruptcy.

Conan Cantwell, of Jackson, Walker, Winstead, Cantwell & Miller, Dallas, Tex., for Bankers Trust Co.

William D. Neary, of Thompson, Knight, Simmons & Bullion, Dallas, Tex., for trustee in bankruptcy.

J. Harvey Lewis, Dallas, Tex., for bankrupt.

WILLIAM M. TAYLOR, Jr., District Judge.

This is a review of an order entered by a referee in bankruptcy. The sole question presented is whether a certain piece of property owned by William F. Neale, Sr., a bankrupt, is an exempt "homestead", as defined by the law of the State of Texas, and thereby exempt from bankruptcy proceedings under the Bankruptcy Act, § 6, 11 U.S.C.A. § 24.[1]

1. 11 U.S.C.A. § 24.
This title shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in

An involuntary petition in bankruptcy was filed against Mr. Neale on April 14, 1965, and an adjudication of bankruptcy was entered by the referee on September 10, 1965. In his report of exempt property to be set aside to the bankrupt, the trustee did not include some 200 acres of land in McLennan County, Texas, owned by Mr. Neale. Subsequent to the adjudication of bankruptcy, the bankrupt sought a review of the trustee's action in excluding the 200 acres as property exempt from bankruptcy proceedings under state law. On March 10, 1966, the referee held with the trustee and denied allowance of the homestead exemption to the 200 acres. This lawsuit followed. The order of the referee is herein affirmed.

The facts are not in dispute. The issue presented revolves around the legal consequences of the established facts.

In 1935, Mr. Neale's father died leaving to his son a farm in excess of 1,000 acres in McLennan County, Texas. The 200 acres which the bankrupt here claims is an exempt homestead is part of this farm. Its value, with the improvements thereon, is not less than $225,000.

Following the administration of his father's estate in 1936, Mr. Neale and his wife took possession of the farm. From their home in Dallas County, Texas, the Neales moved a part of their furniture into a house on the farm and spent weekends and summer months there.

In 1938, the farm house was torn down and a large, modern house was constructed. Mr. and Mrs. Neale spent a considerable amount of time at the farm during 1938 and 1939 supervising the construction and landscaping of the house.

From 1936 until the appointment of a receiver in September, 1965, Mr. Neale operated a dairy farm on the McLennan County land. On the 200 acres in issue, in addition to the foregoing house, were situated feedlots, a dairy barn, tool sheds, and hay barns. This acreage was also used as pasture land for the more than 100 cows which constantly kept on the farm, as well as one some 650 of the remaining 800 acres.

From 1939 until the filing of the involuntary petition, Mr. Neale and members of his family spent many weekends, some week days, and an undetermined number of summer months at the house on the 200 acres.

Both Mr. Neale and his wife paid their poll tax in McLennan County in the years of 1936–1939, 1941, and 1943–1959. After Mr. Neale's 60th birthday in 1959, he was exempt from the Texas poll tax requirement. Mrs. Neale continued paying her McLennan County poll tax in 1960–1961 and 1963–1965. Their voting precinct was No. 19, in which the farm was situated. From 1936 to 1965 the Neales voted in McLennan County in most of the gubernatorial and presidential elections. Mr. Neale attended precinct conventions in Precinct No. 19, and was elected as a McLennan County delegate to the State Democratic Convention in 1956, 1960, and 1962.

The bankrupt caused the farm in McLennan County to be rendered as his homestead for ad valorem tax purposes in the years 1937–1960 and 1963–1966. Rendition of the farm as homestead for the years 1961 and 1962 was omitted due to the death of an employee whom Mr. Neale had charged with such responsibility. In January, 1963, the bankrupt executed a power of attorney to W. J. Miranda, authorizing him to "inventory and to render for assessment and taxation any and all real and personal prop-

the State wherein they have had their domicile for the six months immediately preceding the filing of the petition, or for a longer portion of such six months than in any other State: *Provided, however,* That no such allowance shall be made out of the property which a bankrupt transferred or concealed and which

is recovered or the transfer of which is avoided under this title for the benefit of the estate, except that, where the voided transfer was made by way of security only and the property recovered is in excess of the amount secured thereby, such allowance may be made out of such excess.

erty owned by me in McLennan County, Texas, and to make declaration and designation of my homestead in McLennan County, Texas." The dairy farm operations were conducted by Mr. Neale through managers, foremen, and farm hands.

In 1927, two years after his marriage to Mrs. Neale, the bankrupt and his wife moved from Houston, Texas, to Dallas, Texas, and since that time they have resided without interruption in Dallas County. They purchased a house in University Park in 1927 and resided there until 1934, at which time they sold that house and bought another in Highland Park. The Neales resided in this house and filed a homestead exemption for ad valorem tax purposes until 1945, at which time they sold it and purchased another in Highland Park. In 1946 and 1947 they claimed such an exemption on their second house in that town, but did not claim the exemption from 1948 to 1956, the years in which they continued to occupy that house. The two deeds to this house named Mrs. Neale as titleholder.

From 1956 to 1958 the Neales lived in an apartment in Dallas. In 1958, they purchased a house in Dallas in the names of their son and daughter. The children signed the notes on the house. The Neales moved in and paid an annual rent of $6,000 to their children, which was paid by a $6,000 gift each year in the form of a credit on the notes. The notes were held by Wm. F. Neale & Company or Southwestern Warehouse Company, its subsidiary. The credits on the notes held by the children were made on the books of these companies. Mr. Neale further reduced his children's indebtedness by crediting the amount paid by him in ad valorem taxes on the property. The bankrupt also took a $3,000 homestead deduction on this property for ad valorem tax purposes.

In 1964, the Neales sold the house they purchased for their children and moved into an apartment in Dallas. Mrs. Neale received approximately $55,000 for the sale of this property, which in 1958 had been purchased for $95,000. The Neales resided in the apartment at the time the involuntary petition was filed.

The Neales' daughter has not lived in Dallas since her marriage in 1954. She and her husband reside in Newton Center, Massachusetts. The son, William F. Neale, Jr., is married and has lived with his wife in Dallas since 1958 in the same house. He has a homestead tax deduction on this property.

From 1927 to 1965, Mr. Neale carried on extensive business activities in Dallas from which he derived the principal part of his income. Mr. Neale owns and controls 8 companies and partially owns and controls 5 others. Prior to bankruptcy, these companies were going concerns and yielded a most substantial income to the bankrupt.

In 1963, Mr. Neale borrowed some $309,750 from one of his companies. This loan was secured by a deed of trust executed by the bankrupt on 800 acres of the farm in McLennan County. The 200 acres in issue before this court were a part of the property upon which the deed of trust was secured. Thereafter, the company holding the note assigned it and the deed to the Bankers Trust Company. After the assignment Mr. Neale signed notes totaling $309,750, payable to Bankers Trust and executed another deed of trust on the McLennan County farm and 200 acres to secure the notes.

The performance of this secured transaction by the bankrupt weighed heavily on the referee's determination that the 200 acres were not Mr. Neale's homestead. The referee, in his Conclusions of Law, stated

> To find that Mr. Neale had an undisclosed subjective intent at that time [when the deed of trust was executed in 1964] to claim the most valuable 200 acres of this security with the improvements thereon as his homestead, it is necessary to believe that he intended to work a deliberate fraud on the lender. I do not think he so intended. I believe that at that time

Mr. Neale thought that he would be able to work himself out of his financial difficulties and in good faith intended to repay the loan even if he had to sell the entire farm to do it. Indeed, Mr. Neale made unsuccessful attempts to sell the farm shortly before bankruptcy.

■ The referee properly denied the homestead allowance to the 200 acres. This court is obligated to adhere to a liberal interpretation of laws of Texas in defining the homestead exemption. Phillips v. Paloma & Sons, 5 Cir. 1959, 270 F.2d 791; Meritz v. Palmer, 5 Cir. 1959, 266 F.2d 265; Lewis v. Morrison Supply Co., 5 Cir. 1956, 231 F.2d 632; Gubransen Co. v. Couch, 5 Cir. 1932, 61 F.2d 932. A homestead in Texas is

> a place of residence for the family, where the independence and security of a home may be enjoyed, without danger of its loss or harassment and disturbance by reason of the improvidence or misfortune of a head or any other member of the family. It is a secure asylum of which the family cannot be deprived by creditors. Within its sanctuary, however urgent may be their demands, they cannot intrude.

Cocke v. Conquest, Tex.Com.App., 1931, 120 Tex. 43, 35 S.W.2d 673.

■ It is not necessary that these blessings be enjoyed without interruption. Indeed, a

> family might sometimes from necessity, sometimes for convenience— be locally absent from the homestead for years without in any degree affecting their rights. The law is not concerned about the precise locality of the family at any time, but it is concerned that, wherever they may be carried by convenience, or chance, or misfortune, there shall be a place to which they may return to find the shelter and security of a home.

Foreman v. Meroney, Tex.Sup.Ct.1884, 62 Tex. 723.

■ The Texas Constitution, Article 16, § 51, Vernon's Ann.St.,[2] provides that the homestead may be rural, not to exceed 200 acres. This does not, however, accord the right to the citizens of Texas to exempt 200 acres as a matter of course. As a Texas court has stated

> The framers of our organic law had no thought of exempting 200 acres of land in the country as a home for each family, upon which its members might reside, when they thought proper, but this exemption is only in the event such lands are used for the purpose of a home. The exemption is not of any definite number of acres, but of the home, and the number of acres is a limitation placed upon that home.

Cocke v. Conquest, supra, 35 S.W.2d at 678.

This court is of the opinion that the foregoing judicial expression is determinative of the issue in this case.

At all times, from 1927 to the filing of the bankruptcy petition, Mr. Neale and his wife resided and made their home in Dallas County, Texas. Headquarters for all Mr. Neale's businesses were in Dallas, Texas. The Neale children attended Dallas elementary and high schools. The Neales claimed homestead exemptions on their Dallas County houses from 1934 through 1947 and from 1958 through 1964.

■ Notwithstanding the homestead acclamations in Dallas County, Mr. Neale filed a homestead exemption on the Mc-

2. The Texas Constitution, Article 16, § 51.
The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired.

Lennan County farm in all the years except two in which he did so in Dallas. The Texas homestead law does not permit a landowner to have two homestead exemptions; he is entitled to but one. In those cases in which one has two residences between which he proportions his dwelling and business activities to an extent that such actions do not indicate which is his "home" for purposes of the homestead exemption, Cocke v. Conquest, supra, his subjective homestead intent is controlling. Wootton v. Jones, Tex.Civ.App., 1926, 286 S.W. 680, 681.

Intent and physical residence must coincide to be determinative of such exemption. Lewis v. Morrison Supply Co., supra. However, the court will look first to determine if residence and the intent as indicated by the act of residence are one. If, however, there is such a dispersion of residences that the acts of residing and the intents discernible therefrom do not establish a homestead, then the court will resort to the subjective intent of the landowner. Wootton v. Jones, supra.

There is not here presented a case in which the bankrupt has dual residences such as obfuscate a determination of his homestead. Neither Mr. Neale nor his family made such use of the farm as to render it their "sanctuary of secure asylum." It was not a "home" from which they were absent by reason of necessity or convenience. The farm was but a retreat, advantage of which was taken by the Neales during their leisure time.

Quite to the contrary of the bankrupt's contentions, his continued residence in Dallas and the intent inferrible therefrom conclusively establishes a disavowing of the farm as his homestead.

Mr. Neale is a man learned in the advantages of income tax plans. He purchased a house in Dallas in the names of his children pursuant to a tax plan whereby considerable estate and gift taxes would be saved. His dual homestead exemptions likewise achieved the result of savings on his ad valorem taxes in both Dallas and McLennan Counties. That the homestead exemption on the farm was solely for ad valorem tax advantages is further supported by the fact that he readily mortgaged the farm to secure an indebtedness of over $300,000. If Mr. Neale indeed intended the farm to be his homestead, then as the referee observed, he would have perpetrated a fraud upon his creditors in mortgaging the exempt property. This court is not prepared to indulge in the presumption that the bankrupt was infested with such fraudulent intent.

The record herein more than adequately supports the conclusion that at the time of the filing of the involuntary petition the farm was not Mr. Neale's homestead, that he did not make a "home" of the farm, and that his sole intent in claiming it as a homestead was to obtain an ad valorem tax savings in McLennan County, Texas.

Accordingly, the order of the referee disallowing the homestead exemption as to the 200 acres in McLennan County is

Affirmed.