In re Larry Edwin FROST, Kathleen Frost, Debtors.

In re John D. KNIEP, Sandra B. Kniep, Debtors.

Larry Edwin FROST, Kathleen Frost, Plaintiffs,

v.

COUNTY OF SANTA BARBARA, Defendants.

In re John D. KNIEP, Sandra B. Kniep, Plaintiffs,

v.

COUNTY OF SANTA BARBARA, Defendants.

Bankruptcy Nos. LA 87–23747–NRE, LA 87–23645–NRE.
Adv. Nos. 88–00378–NRE, 88–00377–NRE.

United States Bankruptcy Court, C.D. California.

Jan. 23, 1990.

---

Thomas M. Hinshaw, Michaelson, Susi & Michaelson, Santa Barbara, Cal., for debtors.

Enrique Sanchez, County of Santa Barbara County Counsel, Santa Barbara, Cal., for city of Santa Barbara (creditor).

David Farmer, Farmer & Ready, San Luis Obispo, Cal., for trustee.

OPINION DECLARING AVOIDANCE OF TAX LIEN PURSUANT TO 11 U.S.C. § 522(f) PROPER AND DECLARING UNSECURED DEBT FOR PROPERTY TAXES DISCHARGED PURSUANT TO 11 U.S.C. § 727(b).

ROBERT L. EISEN, Bankruptcy Judge.

## I

### Introduction

These adversary proceedings were consolidated for trial pursuant to Rules of Civ.Proc., Rule 42, 28 U.S.C., as incorporated by Rules Bankr.Proc., Rule 7042, 11 U.S.C., on the ground that they present a common question of law. Plaintiffs Larry Edwin Frost, Kathleen Frost, John D. Kniep, and Sandra B. Kniep (herein referred to collectively as "Debtors") seek an order declaring that, pursuant to 11 U.S.C. § 522(f), they are entitled to avoid various personal property tax liens imposed by the County of Santa Barbara (herein referred to as the "County") which impair their respective personal property exemptions, claimed pursuant to *California Code of Civil Procedure* §§ 703.140, 704.010, 704.-020, 704.040, and 704.060. The County, however, maintains that section 522(f) does not enable Debtors to avoid a "statutory tax lien" in order to preserve their impaired personal property exemptions.

Debtors further seek an order declaring that, pursuant to 11 U.S.C. § 727(b), their respective indebtedness to the County is discharged to the extent the County's claim is declared unsecured. The County concedes that Debtors' tax indebtedness is dischargeable to the extent adjudicated unsecured by this Court.[1]

## II

### Statement of Facts

These proceedings were tried upon stipulated facts. Debtors in their capacity as general partners of Santa Maria Airport Hotel Associates, Ltd., are jointly and severally liable for approximately $43,671.63 in personal property taxes for the 1986–87 fiscal year. Debtors' tax obligation first became delinquent in August of 1986. Debtors were unable to pay their taxes when due in one payment; consequently, Debtors and the County entered into an installment payment agreement. Debtors made several payments under the agree-

---

1. Debtor's tax obligation to the County is dischargeable to the extent adjudicated unsecured on the ground that Debtors' tax obligation first became payable without penalty over one year *before* the filing of Debtor's bankruptcy petitions. See 11 U.S.C. §§ 727(b), 523(a)(1), 507(a)(7)(B). The dispositive facts are not in dispute and Debtors' tax obligation to the County first became due without penalty sometime before August of 1986. Debtors filed their respective bankruptcy petitions on November 18, 1987.

ment; however, in February of 1987, Debtors defaulted on the payment plan. As a result, in September of 1987, the County recorded Certificates of Delinquency of Personal Property Tax in Santa Barbara and Contra Costa Counties against all of Debtors' real and personal property pursuant to *California Revenue and Taxation Code* § 2191.3.

Debtors Larry Edwin Frost and Kathleen Frost (herein referred to collectively as the "Frosts") own one parcel of real property valued at $350,000.00. At the time the County recorded its certificate of delinquency, the Frosts held this parcel subject to a first deed of trust in the amount of $280,000.00, a second deed of trust in the amount of $30,833.00, and a California State Board of Equalization tax lien in the amount of $51,218.24. These three encumbrances, totaling $362,051.24, exceed the value of this parcel of real property by over $12,000.00. The Frosts have no equity in this parcel of real property to which the County's lien can attach. The Frosts, however, own personal property valued at $18,801.91 subject to a lien in the amount of $8,500.00. In sum, the Frosts have $10,301.91 in personal property equity to which the County's lien has attached.

The Frosts, however, assert that they are entitled to avoid the County's tax lien pursuant to section 522(f) in order to preserve their claimed personal property exemptions in the amount of $9,500.00. If the Frosts are entitled to avoid the County's tax lien to preserve their personal property exemption, the County will have a secured claim in the amount of $801.91 and an unsecured, dischargeable claim in the amount of $42,869.72.

Debtors John D. Kniep and Sandra B. Kniep (herein referred to collectively as the "Knieps") do not own any real property. The Knieps, however, own personal property valued at $18,720.00 subject to a senior lien in the amount of $6,700.00. In sum, the Knieps have $12,020.00 in personal property equity to which the County's lien has attached.

Like the Frosts, however, the Knieps contend that they are entitled to avoid the County's tax lien pursuant to section 522(f) in order to preserve their $13,720.00 personal property exemption. The Knieps also contend that the County's tax claim is dischargeable to the extent it is adjudicated unsecured, a claim which the County does not dispute. If the Knieps are entitled to avoid the County's tax lien to preserve their claimed personal property exemption, the County will be left with a completely unsecured, dischargeable claim in the amount of $43,671.63.

The common question of law presented by these consolidated proceedings is whether a tax lien arising under *California Revenue and Taxation Code* § 2191.3 is voidable pursuant to section 522(f) to the extent it impairs a debtor's exemption.

### III

Discussion of Issue Presented: A tax lien arising under *California Revenue and Taxation Code* § 2191.3 is avoidable pursuant to section 522(f) to the extent it impairs a debtor's exemptions.

█ Section 522(f) does not, on its face, allow a debtor to avoid a tax lien in order to preserve an 11 U.S.C. § 522(b) exemption. Section 522(f) provides that,

"Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest ..."

Traditionally, tax liens are neither viewed nor treated as "judicial liens" or "nonpossessory, nonpurchase-money security interests".[2]

Most tax liens come with the Bankruptcy Code's definition of "statutory lien". 11

---

**2.** The term "judicial lien" is defined in 11 U.S.C. § 101(32) as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding".

U.S.C. § 101(47) defines a statutory lien as a lien,

"... arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(47).

The tax liens in the case at bar, for example, arose pursuant to *California Revenue and Taxation Code* § 2191.3, as a result of Debtors' failure to pay their personal property taxes (i.e., "by force of statute on specified circumstances"). The County is correct when it points out the subject tax liens come within the Code's definition of "statutory lien".

The state of California, however, has chosen to treat *California Revenue and Taxation Code* § 2191.3 tax liens as "judicial liens". *California Revenue and Taxation Code* § 2191.4 provides that a tax lien arising from section 2191.3,

"... has the force, effect, and priority of a judgment lien and continues for ten years from the time of the recording of the certificate unless sooner released or otherwise discharged."

Debtors maintain that the County's tax liens, which pursuant to state law have the same "force, effect, and priority of ... judgment lien[s]", are avoidable under section 522(f)(1) given that section 522(f)(1) allows a debtor to avoid a "judicial lien" to the extent the lien impairs a claimed exemption. This provision of state law presents a compelling basis or argument for allowing Debtors to utilize section 522(f)(1) to avoid what is admittedly on its face a "statutory lien".

The County contends that notwithstanding its manner of enforcement, a *California Revenue and Taxation Code* § 2191.3 tax lien is a "statutory lien"; and as such, the County maintains, it cannot be avoided

pursuant to section 522(f).[3] The County's contention, however, is not persuasive in light of California case law holding that state law exemptions take priority over section 2191.3 tax liens. See *Ada Elizabeth Curtis v. County of Kern,* 37 Cal.App.3d 704, 113 Cal.Rptr. 41 (1974).

In *Curtis,* plaintiff filed an action for declaratory relief seeking an order declaring that a prior recorded homestead took precedence over a tax lien recorded pursuant to section 2191.3. Kern County invoked the general rule that a tax lien takes priority over a prior recorded homestead. *California Revenue and Taxation Code* § 2192.1. The trial court entered summary judgment against Kern County, declaring, in substance, that a prior recorded homestead took precedence over a tax lien recorded by the County pursuant to section 2191.4. *Curtis v. County of Kern,* 37 Cal. App.3d at 706, 113 Cal.Rptr. 41. The California Court of Appeals for the Fifth Circuit affirmed the trial court's ruling, noting that,

"The lien created under Revenue and Taxation Code section 2191.4 is treated as a judgment lien. (citations omitted) A judgment lien does not take priority over a prior recorded declaration of homestead. (citations omitted) It follows that a prior recorded homestead takes precedence over a tax lien under Revenue and Taxation Code section 2191.4 since such a lien is treated as a judgment lien." *Curtis v. County of Kern,* 37 Cal.App.3d at 706, 113 Cal.Rptr. 41.

The court further noted that "[t]he legislative intent of [section 2191.4] is clear and explicit, leaving no latitude for judicial construction or arguments relative to general principles of tax law in situations not expressly covered by [the] statute." *Curtis v. County of Kern,* 37 Cal.App.3d at 707, 113 Cal.Rptr. 41.

In seeking to avoid the County's tax lien pursuant to § 522(f)(1), Debtors are, in effect, asserting the priority of a section

---

**3.** The County points out that 11 U.S.C. § 545 sets forth the extent of a debtor or trustee's power to avoid a statutory lien, noting that section 545 does not allow a debtor or trustee to avoid a statutory lien in order to preserve an impaired section 522(b) exemption.

522(b)(1) personal property exemption over a section 2191.3 tax lien. This Court finds that the personal property exemption claimed by Debtors, like the homestead exemption claimed by plaintiff in *Curtis,* takes priority over the County's tax lien on the ground that the County's lien has the same "force, effect, and priority of a judgment lien". *California Revenue and Taxation Code* § 2191.4. More specifically, this Court finds that a *California Revenue and Taxation Code* § 2191.3 tax lien can be avoided pursuant to section 522(f)(1) because the state of California has elected to treat its tax lien as a judicial lien.

 It should be emphasized that this Court is compelled to adopt the reasoning of *Curtis* and hold that a personal property exemption takes priority over a section 2191.3 tax lien. As a general rule, federal courts are bound by state court construction of local exemption statutes. *Jennings v. Stannus,* 191 F. 347 (9th Cir.1911). Where there has been no construction of a state exemption statute, the federal courts have the power to interpret state exemption statutes. *Richardson v. Woodward,* 104 F. 873 (4th Cir.1900). See also *In re Beauchamp,* 101 F. 106 (D.Md.1900). However, where the state courts have interpreted a particular exemption statute, the federal courts are bound by the state courts' rules of construction. *In re Anderson,* 824 F.2d 754 (9th Cir.1987). If the state courts have permitted liberal allowance of a state law exemption in a nonbankruptcy setting, the bankruptcy court is obligated to adhere to the same liberal application in a bankruptcy proceeding. *In re Neale,* 274 F.Supp. 969 (N.D.Tex.1967).

The state court in *Curtis* in substance subordinated a section 2191.3 tax lien to a homestead exemption on the ground that the section 2191.3 tax lien had the same "force and effect of a judicial lien", permit-

ting liberal allowance of a state exemption over a tax lien. In the absence of any authority suggesting a countervailing policy exists, this Court is compelled to subordinate a section 2191.3 tax lien to a claimed personal property exemption, promoting the state's policy of permitting liberal allowance of a state exemption over a section 2191.3 tax lien.[4]

 The language of section 522(f)(1), permitting avoidance of judicial liens, must be read in conjunction with state law. *Matter of Register,* 37 B.R. 708 (Bankr.N. D.Ga.1983). The Court must first determine that debtors are entitled to the claimed exemption and then determine whether the lien impairs debtors' exemptions by applying state law priorities. In the case at bar, the state law priorities are such that a section 2191.3 tax lien is treated as a judicial lien and subordinated to the state law exemptions. For the purpose of section 522(f)(1) avoidance analysis, a section 2191.3 tax lien is deemed a "judicial lien", avoidable pursuant to section 522(f)(1).

 The Court recognizes that a literal reading of section 522(f)(1) does not allow the avoidance of a tax lien to preserve a section 522(b) exemption. This Court, however, cannot elevate a state tax lien to "statutory lien" status for the purpose of determining whether a lien is avoidable under section 522(f) when the state legislature has chosen to relegate these tax liens to "judicial lien" status. *California Taxation and Revenue Code* § 2191.4 provides that a section 2191.3 tax lien has the "... same force, effect, and priority of a judgment lien...." This Court must look to state law to determine the nature, extent, and force of state exemptions. See *In re Barnhart,* 47 B.R. 277 (Bankr.N.D.Tex. 1985); *In re Theisen,* 45 B.R. 122 (Bankr.

---

**4.** This Court is troubled by the lack of more persuasive state court authority addressing the issue of whether all state law exemptions take precedence over a section 2191.3 tax lien. The Court is concerned that various policy considerations may justify the avoiding of a section 2191.3 tax lien to preserve a recorded homestead exemption but not a personal property exemption. California's exemption statute does not on its face favor one exemption over another; in fact, many exemptions are interchangeable, allowing a debtor to maximize utilization of exemption benefits. However, neither the Court nor the parties were able to locate any authority addressing this issue.

D.Minn.1984); *In re Niemyjski,* 26 B.R. 466 (Bankr.D.N.M.1983).

While a state cannot pass legislation which deprives a debtor of the right to avoid a lien under section 522(f), *McManus v. Avco Financial Services,* 681 F.2d 353 (5th Cir.1982); *Giles v. Credithrift of America,* 717 F.2d 281 (6th Cir.1983); *In re Hall,* 752 F.2d 582 (11th Cir.1985); *Matter of Storer,* 13 B.R. 1 (Bankr.S.D.Ohio 1980), this court is unaware of any authority barring a state from legislating an enlargement or enhancement of a debtor's right to avoid liens. The state's right to enhance a debtor's lien avoidance powers seems especially appropriate when the type of lien legislated as avoidable is a lien created for the benefit of the state itself. In short, by characterizing a personal property tax lien as a judicial lien, the effect of section 2191.3 is to enhance a debtor's avoidance powers by allowing a debtor to avoid a state personal property tax lien pursuant to section 522(f)(1).

This Court cannot deny Debtors the right to avoid the Counties' tax liens. To do so would produce the anomalous and inequitable result that a non-bankruptcy debtor could subordinate a section 2191.3 tax lien to the various state law exemptions, while a similarly situated debtor in bankruptcy would be deprived of this privilege, a result inconsistent with the policies of both the Bankruptcy Code and state exemption laws.

The construction given state exemption statutes for the purposes of bankruptcy exemption analysis must comport with both the underlying policies of the Bankruptcy Code and state enactment. *In re Bonant,* 1 B.R. 335 (Bankr.C.D.Cal.1979). The policy of the Bankruptcy Code with respect to exemption law is to allow the individual states to define the nature and extent of personal property exemptions they will afford their citizenry. 11 U.S.C. § 522(b). And the policy of the State of California, as evidenced by *California Revenue and Taxation Code* § 2191.3 and *Curtis,* is to subordinate personal property tax liens to state law exemptions. A finding that debtors are not entitled to enjoy the benefits of the subject personal property exemption would be inconsistent with both federal and state law.

## IV

Conclusion

Debtors are entitled to avoid the County's section 2191.3 tax lien in order to preserve their personal property exemptions pursuant to section 522(f)(1). The County has a secured property tax claim against the Frosts for the sum of $801.91 and an unsecured property tax claim for $42,869.72. In addition, the County of Santa Barbara has an unsecured property tax claim against the Knieps for $43,671.63. The County's tax claims against Debtors are dischargeable to the extent they are adjudicated unsecured pursuant to section 727(b).

The foregoing constitutes this Court's findings of fact and conclusions of law.