**In re Randall REECE, Debtor.**

**Randall Reece, Movant,**

v.

**Parkview Villas of Scottsdale Owners' Association, an Arizona non-profit association, Respondent.**

No. 00–12647–PHX–SSC.

United States Bankruptcy Court, D. Arizona.

Aug. 24, 2001.

Jon S. Musial, Scottsdale, AZ, for Debtor.

Charles E. Maxwell, Mesa, AZ, for the Association.

Ralph McDonald, Phoenix, AZ, Chapter 13 Trustee.

## MEMORANDUM DECISION

SARAH SHARER CURLEY, Chief Judge.

### I. INTRODUCTION

This matter comes before the Court on the debtor's March 6, 2001 motion to avoid the lien of the Parkview Villas of Scottsdale Owners' Association (hereinafter "Association")[1] pursuant to 11 U.S.C. § 522(f)(1)(A)[2]. The Association filed a response on March 19, 2001, and the debtor replied on March 23, 2001. This court held a hearing on the matter on March 30, 2001. At the hearing, the court directed counsel for the respondent to submit the Associations's rules and regulations as well as the condominium Declaration of Grants, Covenants, Conditions and Restrictions Establishing a Plan for Horizontal Property Regime Ownership of Parkview Villas of Scottsdale Condominiums (hereinafter "CC & R's") within one week. Respondent filed one of the requested documents on April 2, 2001. While the CC & R's were subsequently filed with the Court, the Association never provided a copy of its by-laws. The matter was then deemed under advisement.

In this Memorandum Decision, the Court has set forth its findings of fact and conclusions of law pursuant to Rule 7052 of the *Rules of Bankruptcy Procedure*. The issues addressed herein constitute a core proceeding over which this Court has jurisdiction. 28 U.S.C. §§ 1334(b) and 157(b).

### II. FACTUAL BACKGROUND

The debtor is the owner of Condominium Unit No. 251 located in the Parkview Villas of Scottsdale condominium development, 1211 North Miller Road, Scottsdale, Arizona[3]. In his schedules, the debtor listed the property's current market value at $95,000, encumbered by a deed of trust representing a liability of $63,786.12[4]. The Association has asserted a lien for unpaid assessments in the amount of $13,366.65.

---

1. The Association has also filed a Motion for Relief from the Automatic Stay, so that it may proceed with collection on the asserted lien. At the March 6, 2001 preliminary hearing on the matter, the Court granted relief from the automatic stay, to allow the parties to proceed with an appeal and any cross appeal of the Justice Court judgment in the State Court. The parties stipulated that any further relief from the stay would be stayed until this motion had been resolved.

2. All references are to the Bankruptcy Reform Act of 1978, as amended, unless otherwise noted.

3. The property is legally described as:
"Unit Two Hundred Fifty-One (251), Parkview Villas of Scottsdale, a condominium development as set forth in Declaration recorded at Recorder's No. 83–305358 and corrected at Recorder's No. 84–347319 and Affidavit of Correction recorded at Recorder's No. 86–184112 and Amended Horizontal Property Regime recorded at Recorder's No. 86–184113 and as shown on the Plat of Records recorded in Book 269 of Maps, Page 44, Records of Maricopa County, Arizona.
Together with said Unit's respective and undivided interest in and to the common areas as set forth in said declaration and as shown on said Plat."

4. The beneficiary under the deed of trust is Cenular Federal Savings Bank. On July 10, 2001, the parties entered into a stipulation modifying the automatic stay so that the debtor could cure pre- and post-petition arrearages on the property.

The condominium complex is governed by the CC & R's which were filed in the Recorder's Office of Maricopa County on July 13, 1984. In addition to establishing the common horizontal scheme for the property, the CC & R's also create the Association and vest with it certain administrative powers [5]. The Association is charged with the responsibility of managing the property's common area in accordance with its bylaws [6]. Section 9.5 of the CC & R's provides that the Association shall have the power to govern, manage, maintain, repair, administer and regulate the property. The only substantial limitation on the power vested in the Association is a restriction on disabling the condominium regime.

Membership in the Association is compulsory and occurs contemporaneously with the acquisition of a condominium unit in the development. The Association is permitted to assess yearly membership fees, up to $720 per unit, for maintenance of the complex's common areas. Finally, Section 10.1 of the CC & R's allows the Association to seek reimbursement, in the form of a yearly assessment, for any repairs made to the common areas based on the fault of the owner. The Association retains architectural control over the complex and in addition to reimbursement, the Association rules provide that after an initial warning is issued, an owner may be fined if she makes improvements on her individual unit which adversely affect the property's common areas.

The debtor filed a Chapter 13 bankruptcy petition on November 17, 2000. Subsequently, the Association filed a proof of claim in the amount of $13,366.65 plus accruing interest, costs, and attorney's fees. The claim was based upon a judgment entered in Justice Court, East Tempe Precinct. The action in Justice Court was an attempt to enforce and collect the Association's previously asserted lien for unpaid assessments.

## III. DISCUSSION

■ 11 U.S.C. § 522(f)(1)(A) allows a debtor to avoid a judicial lien to the extent that it impairs an allowed exemption. In this case, the exemption which is being impaired is an undisputed homestead exemption. In order to prevail on such a motion, the debtor must show (1) that he has an interest in the homestead property; (2) he is entitled to a homestead exemption; (3) the Association's asserted lien impairs that exemption; and (4) the lien is judicial rather than statutory. 11 U.S.C. § 522(f)(1)(A) (West 2001); *In re Morgan,* 149 B.R. 147, 151 (9th Cir. BAP 1993); *In re DeCarolis,* 259 B.R. 467, 471 (1st Cir. BAP 2001). As the moving party, the debtor carries the burden of proof on all four factors. *Id.* The parties do not dispute that the debtor has an interest in the property and has asserted a valid homestead exemption. Nor do the parties dispute that the Association's lien, if valid, impairs the exemption or that if the Association's lien is judicial, as defined by 11 U.S.C. § 101(53), it may be avoided.

---

**5.** Section 2.12 of the CC & R's states "Association means the Parkview Villas of Scottsdale Owners' Association, Inc., an Arizona non-profit corporation, its successors and assigns. The Association shall, for all purposes hereof, be deemed to be a Council of Co'Owners (sic), as that term is defined in Arizona Revised Statutes § 33–551(5)." (Internal quotations omitted).

**6.** The "Association Rules and Regulations, August 1999" specifically state that they were promulgated under the authority vested in the Association through the CC & R's and bylaws. Counsel for the Association never provided the Court with the Association bylaws.

Thus, the dispositive question presented to this court is whether the lien asserted by the Association is statutory. If the lien is statutory, the debtor cannot meet the fourth element of the aforementioned test.

■ The debtor presents two arguments as to why this lien is judicial in nature and, therefore, avoidable. First, since the Association obtained a judgment in the enforcement action in Justice Court, the lien was not truly created or choate until that judgment was entered. Therefore, the lien is judicial. Alternatively, the debtor argues that since both the Arizona Condominium Statute and the Bankruptcy Code definition of judicial lien contain the word "levied", the original assessment by the Association was a judicial lien even prior to the commencement of the action in Justice Court. Based upon the available authority and the statutory language of the Arizona statutes and the Code, the debtor's arguments are misplaced.

## A. The State Court Judgment

As to his first argument, the debtor contends that the lien asserted by the Association is a judicial lien because the Association proceeded in the East Tempe Justice Court to prosecute and obtain a judgment on its claim. The Bankruptcy Code defines a statutory lien as a "lien arising solely by force of a statute on specified circumstances or conditions." 11 U.S.C. § 101(53) (West 2001). Under Ari-

zona law, § 33–1256 refers to the filing of a "declaration" to perfect a lien that may arise as a result of a condominium unit owner's failure to pay an assessment. A.R.S. § 33–1256(A) (West 2001) [7]. In turn, § 33–1202 defines a "declaration" as "any instrument, however denominated, that created a condominium and any amendments to those instruments." A.R.S. § 33–1202(13) (West 2001). Hence, as with Article 9 of the Uniform Commercial Code, the filing of the declaration is similar to the filing of a financing statement. Each document may be filed in advance and is filed for purposes of perfection only. When a subsequent event occurs, such as a finalization of the amount of the assessment owed by the condominium unit owner or the execution of the note and security agreement and the advance of funds by the secured creditor in a commercial transaction, the essential nature of each lien is not somehow recharacterized from statutory to judicial. Once the condominium association levies an assessment, the amount of the statutory lien is determined. The condominium association need not file any additional documentation to record and perfect the claim. A.R.S. § 33–1256(E) [8] (West 2001).

As to the reference that a statutory lien is a lien which only arises upon "specified circumstances or conditions," as set forth in 11 U.S.C § 101(53), this language is satisfied upon the original filing of the CC

---

7. A.R.S. § 33–1256(A) states:

"The association has a lien on a unit for any assessment levied against that unit or monetary penalties imposed against its unit owner from the time the assessment or penalty becomes due. The association's lien may be foreclosed in the same manner as a mortgage on real estate. Unless the declaration otherwise provides, fees, charges, late charges, monetary penalties and interest charged pursuant to § 33–1242, subsection A, paragraphs 10, 11 and 12 are en-

forceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment of the assessment becomes due."

8. A.R.S. § 33–1256(E) states:

"Recording of the declaration constitutes record notice and perfection of the lien. Further recordation of any claim of lien for assessment under this section is not required."

& R's which gives the Association the right to claim a lien on any unpaid assessments. Contrary to the debtor's argument, although the Association is required to commence an action to enforce the lien for unpaid assessments within three years after the full amount of the unpaid assessments becomes due, or the lien for unpaid assessments is extinguished[9], the intent of § 33–1256, taken as a whole, is to create a statutory lien as to which a portion (unpaid assessments) may no longer be enforced if no action is taken by a condominium association within the designated period of time. The legal enforceability of a lien, however, does not change the nature of the lien.

While neither party has offered any Ninth Circuit authority on the issue of enforcement of a statutory lien versus the creation of a judicial lien, *In re Koski*, 149 B.R. 170 (Bankr.D.Idaho 1992) is instructive on this point. In *Koski*, the debtors had allowed a construction company to place a statutory mechanic's lien on the real estate as a part of a contract with the company. *Id.* at 171. The lien was subsequently assigned to Seattle First National Bank and properly recorded prepetition. *Id.* Prior to the filing, the Bank commenced an action in state court to foreclose on the lien and prevailed on a motion for summary judgment. *Id.* Postpetition, the debtor sought to avoid the lien under § 522(f)(1)(A), claiming the Bank had a judicial, rather than statutory, lien. *Id.* The court denied the debtor's motion and found that the lien was, in fact, a statutory lien which had existed prior to the state court enforcement action. *Id.* at 177. The court specifically stated that the state court action was one of enforcement, rather than creation. "The state court deci-

sion was in enforcement of the lien; it did not create the lien. As a result, the judicial decision did not change the lien from a statutory lien to a judicial lien." *Id.*

A number of courts outside the Ninth Circuit have also addressed the issue of enforcement as opposed to the creation of a lien. In the decision of *In re Stern*, 44 B.R. 15 (Bankr.D.Mass.1984), the court held that a condominium association lien for unpaid assessments which arose under state statute was not avoidable as a statutory lien. Mirroring the reasoning in *Koski*, the court stated that "a judicial action to enforce the lien and establish its particular priority does not transform its essential character to a judicial lien; the existence of the lien is not dependent on judicial action." *Stern*, 44 B.R. at 18. *See also: In re Nentwick*, 79 B.R. 145 (Bankr.N.D.N.Y.1987).

The lien in this case arose purely from the authority granted to the Association under A.R.S. § 33–1256. The subsequent judicial action by the Association did not change the fundamental fact that this lien was statutory. Quite simply, the lien existed prior to the commencement of any litigation against the debtor.

The debtor also argues that the Association is limited to collecting $500 in fines against him pursuant to Section 11.4(b)(iii) of the CC & R's. This argument also fails because that specific Section deals with, and limits only, the assessment of fines for failure to abide by the rules and regulations of the Association. This lien was assessed for the failure to pay common expenses, repairs to the common areas and the interest and costs associated with the failure to pay as contemplated under Section 12.7 of the CC & R's. Further, costs

---

9. A.R.S § 33–1256(F) (West 2001) states: "A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the full amount of the assessments becomes due."

may be assessed and awarded pursuant to A.R.S. § 33–1242(11) [10], and under A.R.S. 33–1256(H) [11], the Association may also recover reasonable attorney fees.

## B. Statutory Language Analysis

The debtor's second argument focuses on the fact that the Association's lien is, in essence, a levy and, hence, a judicial lien. Section 101(36) of the Bankruptcy Code states: "judicial lien means lien obtained by judgment, levy, sequestration or other legal or equitable process or procedure." The debtor argues that because the Arizona Statute authorizing the Association to assert the lien states that the "association has a lien on a unit for any assessment levied," the lien must be judicial. A.R.S. § 33–1256(A) (West 2001), *supra*, note 7. While the debtor presents a facially interesting argument, a close analysis of A.R.S. § 33–1256 leads to a contrary conclusion.

A.R.S. § 33–1256(E) (West 2001), *supra*, note 8, states "[r]ecording of the declaration constitutes record notice and perfection of the lien. Further recordation of any claim of lien for assessments under this section is not necessary." This Section effectively places a lien on each unit for its share of common expenses or such other amounts that may subsequently become due and remain unpaid pursuant to the CC & R's and Association rules. Each unit owner is on notice, based on the recorded declaration, that the Association may assess certain fees and expenses and claim those unpaid amounts as a lien

against the property based upon the original filing of the CC & R's. The lien that the Association claims is solely a creature of statute; there is no basis for the Association to assert such a lien absent the specific authority granted under A.R.S. § 33–1256.

The debtor cites to *In re Frost*, 111 B.R. 306 (Bankr.C.D.Cal.1990) for the proposition that even if a lien arises by force of statute, it may be treated as a judicial lien for purposes of avoidance under § 522(f)(1)(A). However, *Frost* is inapposite to the facts presented to this Court, because of the specific provisions of California law applied in that case. The Court held that even though the California tax lien in question was, on its face, a statutory lien, that specific lien could be avoided because the California statute specifically stated that the lien was to have the effect of a "judgment lien." *Id.* at 309–310. The Court noted the anomalous result, conceding that most California tax liens were statutory and not subject to such avoidance. No such qualification exists under Arizona law. The Arizona statute states that the lien asserted by an Association will be superior to all but a few existing liens [12]. The statute further states that the Association may foreclose on the lien "in the same manner as a mortgage on real estate." A.R.S. § 33–1256(A) (West 2001), *supra*, note 7. Contrary to the assertions of the debtor, Arizona law clearly distinguishes and promotes the Association

---

**10.** A.R.S. § 33–1242(11) (West 2001) states that the Association may:

"Impose charges for late payment of assessments and, after notice and an opportunity to be heard, impose reasonable monetary penalties upon unit owners for violations of the declaration, bylaws and rules of the association."

**11.** A.R.S. 33–1256(H) (West 2001) states:

"A judgment or decree in any action brought under this section shall include costs and reasonable attorney fees for the prevailing party."

**12.** The only liens which have priority over a lien asserted by an Association are a recorded first mortgage or deed of trust, real estate taxes and other government assessments, and any lien recorded against the property prior to the filing of the declaration.

lien over that of any ordinary judgment lien.

One additional case is helpful in the analysis of the issues before this Court. In the decision of *In re Ranes*, 31 B.R. 70 (Bankr.D.Colo.1983), the Court considered whether an attorney's "charging lien" was a statutory lien for purposes of avoidance under § 522(f). *Id.* at 71. In *Ranes*, the debtor sought to avoid a lien asserted by an attorney who had performed services in conjunction with the debtor's divorce proceedings. *Id.* After completion of the proceedings, the attorney sought to assert a charging lien for unpaid fees against the debtor's spousal maintenance award. The Court noted that under the Colorado statute, an attorney had an attached and automatically perfected lien against the proceeds of a judgment. *Id.* at 72. The attorney was not required to take any further action to make that lien enforceable as to the client[13]. *Id.* The Court found that the attorney's later judicial enforcement of the lien did not change the fact that the lien was solely a statutory creation. *Ranes*, 31 B.R. at 72. In concluding that the lien was statutory rather than judicial, the court stated "[t]here is no legal or equitable process or proceeding necessary to determine whether or not an attorney is entitled to this lien before it attaches." *Id.*

While factually dissimilar, the reasoning in *Ranes* is equally applicable in the present case. The Arizona statutory regime governing condominium associations has given the Association the right to an automatically perfected lien for any unpaid assessments made under the declaration. The Association need not take any further steps to perfect its lien. Once the declara-

tion was filed in 1984, the Association had a valid, perfected lien in any unpaid assessment made by the Association in the future as to all units governed by the CC & R's. In this case, the "specified circumstances or conditions" stated in 11 U.S.C. § 101(53) were the filing of the declaration and the assessment by the Association. When the debtor failed to make payments on the assessment issued by the Association, the Association had a valid and perfected lien against the property without need for further action. There was no additional legal or equitable process invoked to create the lien. Additionally, the Association's later efforts to enforce the lien in Justice Court did not, in any way, alter the essential statutory nature of the lien.

## IV. CONCLUSION

The Association's lien is a statutory lien as defined in 11 U.S.C. § 101(53). Therefore, the statutory lien is not subject to avoidance as impairing the Debtor's homestead exemption, pursuant to 11 U.S.C. § 522(f)(1)(A). The Court will execute a separate order incorporating this Memorandum Decision.

---

**13.** Unlike the Arizona statute in question, which establishes that the lien is attached and perfected upon filing of the declaration, the Court in *Ranes* noted that an attorney must file notice with the court of the lien in order to perfect and make the lien enforceable against third parties. *Ranes,* 31 B.R. at 72.