831 P.2d 868

**Naaman Paul MIDYETT and Ava Jean Midyett, husband and wife, Plaintiffs/Appellees,**

v.

**RENNAT PROPERTIES, INC., Defendant/Appellant.**

No. 2 CA–CV 91–0214.

Court of Appeals of Arizona, Division 2, Department A.

March 26, 1992.

Review Denied July 7, 1992.

Gerald T. Barton and Russell Dillow, Tucson, for plaintiffs/appellees.

Law Offices of Ruben Teran S. by Ruben Teran S., Douglas, for defendant/appellant.

## OPINION

LACAGNINA, Presiding Judge.

Rennat Properties, Inc., the purchaser of real property sold at a sheriff's execution sale to satisfy a judgment for damages and foreclosure obtained by Paul and Jean Midyett against John A. Williams, appeals from the trial court's post-judgment order that Rennat was obligated to pay an existing first lien. The trial court accepted an accounting filed by the Midyetts which did not require them to pay any proceeds received from the execution sale to satisfy the first lien which was not affected by the judgment and execution sale. Therefore, as between the Midyetts, the judgment creditors, and Rennat, the court found Rennat is obliged to pay the indebtedness.[1] We affirm, finding that the trial court correctly accepted the accounting filed by the Midyetts which showed that the proceeds from the execution sale satisfied the judgment, and hold that under the facts of this case the purchaser at execution sale of property subject to a prior lien cannot require the judgment creditor to pay the prior lien from the proceeds of the execution sale.

## FACTS

The Midyetts filed an action against Williams, pursuant to A.R.S. § 33–748, for breach of contract and foreclosure of the lien. Judgment was entered in favor of the Midyetts for damages totalling $57,950.81. The judgment ordered the lien of the realty contract foreclosed as a second lien and ordered the sheriff to sell the realty subject to the first lien and to pay the Midyetts, deeming the proceeds sufficient to satisfy the judgment. The judgment provided for termination of all of Williams' interest in the property except his right of redemption, and the right of redemption of his creditors with liens subsequent to the judg-

ment. At a sale duly noticed by the sheriff to satisfy the judgment subject to a prior lien, the Midyetts bid the amount of the judgment, $57,950.81. Rennat became the purchaser by bidding $60,150 and, after the redemption period had expired, received a deed from the sheriff.

The November 3, 1976 contract between the Midyetts and Williams stated that the property was conveyed to Williams "subject to that certain realty mortgage dated August 15, 1972, recorded August 18, 1972, in Docket 800, Page 140, records of Cochise County, Arizona which remains the obligation of the Sellers herein." In a post-judgment proceeding, Rennat requested an accounting and claimed that pursuant to the terms of the contract, the Midyetts should be ordered to apply the proceeds from the execution sale toward satisfaction of the first lien. Rennat appeals from the trial court's order rejecting this argument and accepting the accounting filed by the Midyetts showing that the proceeds from the execution sale satisfied the judgment.

## DISCUSSION

■ Rennat argued in a motion for rehearing that the initial transaction between the Midyetts and Williams was a wrap-around mortgage transaction which entitled it as purchaser to enforce the terms of the contract for sale which stated that the first lien remained an obligation of the sellers.[2] We note initially that the breach of contract action was merged into the judgment for damages caused by the breach and the foreclosure of the lien created by the contract. 46 Am.Jur.2d *Judgments* § 386 (1969). "[T]he original cause of action was extinguished in vitality and effectiveness by the rendition of the judgment and lost its identity." 46 Am.Jur.2d *Judgments* § 390 at 556 (1969); *see also Czapar v. Ginter,* 76 Ariz. 84, 259 P.2d 253

1. The rights of the owner of the first lien, against either the Midyetts or Rennat, in the event the debt is not paid according to its terms, are not affected by the judgment, execution sale or post-judgment orders.

2. Rennat never raised this issue in the pleadings which resulted in the acceptance of an account-

ing by the Midyetts of funds received and applied during their term as receiver of the property prior to the sheriff's deed, or in opposition to Williams' attempt to set aside the judgment and the appeal to this court affirming the trial court judgment denying Williams relief from the judgment and foreclosure.

(1953). The judgment then becomes the sole measure of the rights and obligations of the parties, and any proceeding to enforce the parties' respective rights and obligations is founded solely on the judgment. 46 Am.Jur.2d *Judgments* § 390 (1969).

When Rennat purchased the property, the relationship between Williams and the Midyetts was based on the judgment and not on the contract, and Rennat acquired Williams' interest in the property, subject only to Williams' right to redeem the property. *Colvin v. Weigold,* 31 Ariz. 370, 253 P. 633 (1927). As the execution purchaser, however, Rennat could not succeed to or exercise this right. *Id.* The Midyetts' duties and obligations as sellers arising out of the contract terminated with the entry of judgment for damages and foreclosure. The entry of judgment "creates a new right in the judgment plaintiff and imposes a new duty on the judgment defendant independent of the cause of action alleged in the suit in which the judgment was given." *Gibson v. Epps,* 352 S.W.2d 45, 49 (Mo.App.1961). As a result of this, the legal relationship between Williams and the Midyetts changed from vendor-purchaser to judgment creditor-judgment debtor. The payment of the sale proceeds to the Midyetts by the sheriff was not a payment made on behalf of Rennat to comply with terms of the contract between Williams and the Midyetts, because that contract no longer existed, but a payment pursuant to the mandates of the judgment for foreclosure based upon a termination of Williams' rights under the contract. *Cf. Couglin v. Blair,* 41 Cal.2d 587, 262 P.2d 305, 311 (1953) (money judgment is substituted for defendant's duty under the contract, absolving him of any further duty to perform). Upon the expiration of Williams' right of redemption and delivery of the sheriff's deed to Rennat, no one could claim a right to enforce the terms of a non-existent contract for sale.

In addition, Rennat was bound to examine the title of the land purchased, *Madden v. Barnes,* 8 Ariz.App. 404, 446 P.2d 510 (1968), and was bound by the doctrine of caveat emptor because that doctrine applies to judicial sales. *Lebrecht v. Beckett,* 96 Ariz. 389, 396 P.2d 13 (1964). When Rennat purchased the property from the sheriff at the execution sale, it had notice that the property was subject to a prior lien and was being sold to satisfy the judgment obtained by the Midyetts.

The title taken by a purchaser at a judicial sale foreclosing a junior lien subject to a senior lien has been described by the Arizona Supreme Court in *Mid-Kansas Federal Savings and Loan v. Dynamic Development Corp.,* 167 Ariz. 122, 804 P.2d 1310 (1991). In that case, the court stated:

> [T]he purchaser at a foreclosure sale of a junior lien takes subject to all senior liens. Although the purchaser does not become personally liable on the senior debt (as does an assuming grantee), the purchaser must pay it to avoid the risk of losing his newly acquired land to foreclosure by the senior lienholder. Therefore, the land becomes the primary fund for the senior debt, and the purchaser is presumed to have deducted the amount of the senior liens from the amount he bids for the land.

167 Ariz. at 130, 804 P.2d at 1318 (citations omitted).

In addition, the distribution of the proceeds generated at the execution sale was a matter which concerned only the sheriff, the judgment debtor and creditors of the debtor. 30 Am.Jur.2d *Executions* § 503 (1969). The accounting filed by the Midyetts showed that the monies received from the sheriff were applied to satisfy the judgment rendered by the court. There was no evidence before the trial court to establish any right in Rennat as execution purchaser to require the Midyetts to discharge the senior lien out of the sale proceeds. *Cf. Fay v. Harris,* 64 Ariz. 10, 164 P.2d 860 (1945) (execution purchaser not entitled to offset because of lien on property purchased). Assuming that the trial court determined that a surplus in excess of the judgment had been received by the sheriff, it could not have ordered that the surplus be applied to the prior lien. The surplus had to be paid to the judgment

debtor on whose behalf the property was sold to satisfy the judgment, *United States v. Harris & Company Advertising, Inc.*, 149 So.2d 384 (Fla.App.1963), or his creditors with liens subsequent to the judgment. . Rennat, as execution sale purchaser, did not become a creditor of Williams, but rather, a holder of legal title to the property by deed from the sheriff free and clear of all Williams' rights and those of his creditors.

The post-judgment orders of the trial court are affirmed. The Midyetts are awarded attorneys' fees on appeal, upon filing the proper affidavits pursuant to Ariz.R.Civ.App.P. 21(c), 17B A.R.S.

LIVERMORE, C.J., and HOWARD, J., concur.