257 P.3d 1168 (2011)
CYPRESS ON SUNLAND HOMEOWNERS ASSOCIATION, a non-profit corporation; Scott Jacoby, an individual, Plaintiffs-Appellees,
v.
James V. ORLANDINI, II; First American Title Insurance Company, a California corporation, Intervenors-Appellants.
Cypress on Sunland Homeowners Association, Plaintiff-Appellee,
v.
James V. Orlandini, II; First American Title Insurance Company, a California corporation, Intervenors-Appellants.
Nos. 1 CA-CV 10-0142, 1 CA-CV 10-0235.
Court of Appeals of Arizona, Division 1, Department B.
May 19, 2011.
*1171 Gust Rosenfeld P.L.C. by Scott A. Malm, Phoenix, Attorneys for Appellants.
Shaw & Lines, LLC by Mark E. Lines, Phoenix, Attorneys for Scott Jacoby.
Maxwell & Morgan, PC by Charles E. Maxwell, Brian W. Morgan, Paul R. Neil, Mesa, Attorneys for Cypress on Sunland Homeowners' Association.

OPINION
WEISBERG, Judge.
¶ 1 James V. Orlandini, II and First American Title Insurance Company (collectively "Intervenors") appeal from the trial court's orders consolidating cases, denying a notice of change of judge, reinstating a default judgment on foreclosure, and awarding attorneys' fees and costs to Cypress on Sunland Homeowners' Association ("HOA"). We affirm the court's orders consolidating cases and denying a notice of change of judge. We reverse the court's order reinstating the default judgment on foreclosure because the conduct of the HOA's lawyers in obtaining the default judgment on foreclosure constituted a fraud upon the court. We also reverse the award of attorneys' fees and costs to the HOA and remand the matter to the trial court for further proceedings.

PROCEDURAL BACKGROUND
¶ 2 These appeals involve separate but related superior court actions regarding the same real property: CV2007-090828 (the "lien foreclosure action") and CV2008-021749 (the "quiet title action"). The issues on appeal arise from the consolidation of those actions and orders entered thereafter in favor of Cypress on Sunland Homeowners' Association and Scott Jacoby (collectively "Appellees").

*1172 The Lien Foreclosure Action
¶ 3 Derrick Spearman owned real property in Phoenix ("the property") subject to a Declaration of Covenants, Conditions, Restrictions & Easements ("CC & Rs") of the HOA recorded in January 2003. On June 2, 2006, American Lending Corporation ("ALC") loaned $190,400 to Spearman, as evidenced by a note, and secured by a deed of trust on the property recorded on June 8, 2006 in Maricopa County records at Document No. 2006-778589 (first deed of trust). On the same day, ALC loaned $23,900 to Spearman, as evidenced by a note and secured by a second deed of trust on the property and also recorded on June 8, 2006. First American Title Insurance Co. ("First American") issued a lender's title insurance policy to ALC and its assignees insuring the first deed of trust. The first deed of trust was assigned to Alliance Bancorp on June 6, 2006 by an unrecorded assignment. It was then assigned to HSBC Bank, USA, as trustee for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-AR5, ("the Bank") on June 12, 2006. This later assignment was recorded on November 10, 2008.
¶ 4 Spearman failed to pay assessments due the HOA. Pursuant to the CC & Rs, the unpaid amount was secured by an assessment lien on the property. In anticipation of filing a lien foreclosure action, the HOA, through its attorneys, Maxwell & Morgan, P.C., obtained a litigation guarantee showing ALC's June 8, 2006 first and second deeds of trust. It also showed that on February 9, 2007, the HOA had recorded a judgment against Spearman in the amount of $748.21.
¶ 5 On April 9, 2007, the HOA filed a lien foreclosure action against Spearman and ALC pursuant to Arizona Revised Statutes ("A.R.S.") section 33-1807(A)(2007). The complaint alleged that ALC had two deeds of trust on the property; it did not state that one of them was a first deed of trust, nor did it cite A.R.S. § 33-1807(B)(2), regarding the priority of a first deed of trust over an assessment lien. The complaint further alleged that under the CC & Rs, the HOA had a "lien upon the Property which was perfected upon recordation of the CC & Rs" and that the defendants' liens upon the property were "subordinate and inferior to the rights and lien of the [HOA]." It sought judgment in the principal sum of $2,436.28, plus prejudgment interest; costs and attorneys' fees pursuant to A.R.S. § 33-1807(H); a declaration that the assessment lien was "a superior and priority lien on the Property"; and an order foreclosing "the interests of the Defendants, and all persons claiming under them. . . except such rights of redemption as they may have by law."
¶ 6 ALC was served but, having previously assigned the first deed of trust, did not answer. After an ex parte hearing on June 4, 2007, at which only the HOA's lawyer was present, Commissioner M. Scott McCoy entered a default judgment on foreclosure in favor of the HOA and against Spearman and ALC and its unknown heirs and devisees. The judgment, which was prepared by Maxwell & Morgan, awarded the HOA the principal sum due, together with prejudgment interest, costs and attorneys' fees, declared the assessment lien a "valid first lien," foreclosed all other liens held by defendants and "all persons claiming under any of them," and ordered a sale to satisfy the debt. The judgment did not reflect that the HOA purported to foreclose on the first deed of trust. On July 26, 2007, Robert Draper purchased the property at a sheriff's sale for $5,599. The appraised value of the property on that date was $190,000.
¶ 7 On October 9, 2007, the successor trustee of the Bank noticed a trustee's sale to foreclose on the first deed of trust. The notice stated that Wells Fargo Home Improvement ("Wells Fargo") was the servicing agent for the Bank. After the successor trustee became aware of the HOA's judgment on foreclosure, on January 2, 2008, the attorney for the Bank/Wells Fargo wrote Brian Morgan of Morgan & Maxwell advising him that Wells Fargo had a first deed of trust on the property securing a loan in the principal amount of $190,400, and recorded June 8, 2006 at document number XXXXXXXXXXX. Acknowledging that the default judgment had foreclosed the second deed of trust, he asked Morgan to confirm in writing that the first deed of trust had priority over the assessment lien, that it had not been extinguished *1173 by the judgment, and that any wording in the judgment suggesting otherwise "was nothing more than a clerical error." Although later claiming that he was "deceived" by the letter, Warren Nikolaus of Maxwell & Morgan responded. He stated that the HOA "asserted no lien priority over the first mortgage held by your client in our past foreclosure lawsuit upon the property" and that "individuals who buy such properties at sheriff's sales are also aware that they are bidding and taking properties subject to the first mortgage only."[1]
¶ 8 On March 15, 2008, Draper sold the property by warranty deed to his friend, Scott Jacoby, for $110,000. Jacoby was aware of the pending trustee's sale and the Bank's position that it held a first lien. The Bank obtained a trustee's deed upon sale on May 22, 2008, and on September 26, 2008, sold the property to James V. Orlandini for $80,550.

The Quiet Title Action
¶ 9 On September 22, 2008, a few days before Orlandini purchased the property, Jacoby filed a complaint to quiet title to the property pursuant to A.R.S. § 12-1101(2003). He named the Bank as a defendant and claimed that its interest in the property had been foreclosed as a result of the judgment on foreclosure. After the Bank answered the complaint, Jacoby filed a motion for judgment on the pleadings and/or summary judgment.
¶ 10 In March 2009, Orlandini became aware of the quiet title action. Orlandini and First American filed a motion to intervene and submitted a proposed answer and a counterclaim. In their counterclaim, they sought declaratory relief to set aside the default judgment entered in the foreclosure action, as well as the subsequent sheriff's sale, pursuant to Arizona Rule of Civil Procedure 60(c)(4) and (6),[2] or alternatively, restitution based on unjust enrichment. Jacoby stipulated only to Orlandini's joinder as a real party in interest, but objected to intervention on any other ground.
¶ 11 Judge Edward O. Burke granted the motion to intervene, and the Intervenors filed their answer and counterclaim. The court granted the Bank's motion to dismiss because it no longer had an interest in the property. Jacoby then filed a motion to dismiss the Interveners' counterclaim alleging (1) failure to join necessary parties; (2) that the claims were time-barred under Rule 60(c); and (3) lack of standing. The Intervenors disputed these allegations and specifically asserted that they had requested relief within a reasonable time under Rule 60(c)(6), and also that the default judgment could be set aside for a "fraud upon the court." In addition to their response to Jacoby's motion to dismiss, the Intervenors filed a cross-motion for summary judgment.
¶ 12 After oral argument on Jacoby's motions to dismiss and for summary judgment and the Interveners' cross-motion for summary judgment, the court rejected the arguments made in Jacoby's motions and granted the Interveners' cross-motion. As to the cross-motion, the court ruled that under A.R.S. § 33-1807(B) and the CC & R's, the assessment lien was subordinate to the first deed of trust held by ALC and its successors in interest; that the first deed of trust was a first lien and was superior to the assessment lien, which could not be foreclosed by the HOA's default judgment. The court further ruled that the allegations and recitations in the HOA's foreclosure complaint and in the judgment of foreclosure, that the assessment *1174 lien was a first lien that had priority over and was superior to the first deed of trust, and therefore foreclosed the first deed of trust, were false.
¶ 13 The court also found that the attorneys at Maxwell & Morgan involved in the lien foreclosure action, who specialize in homeowner association law, knew that the statements in the complaint and default judgment were false and not made in good faith; that they requested relief at the default hearing that they knew to be prohibited and illegal; that they knowingly misled the commissioner who entered the default judgment; and that they committed a fraud on the court. The court determined that "the fraud in this case is so severe" that the attorneys' "lack of candor" in advising the commissioner who entered the default judgment of foreclosure about "the plain language of the Arizona statute which prohibited relief they were seeking, justifies setting aside that judgment for fraud" under Rule 60(c)(6). The court further determined that the attorneys' conduct in presenting the HOA's false claims to the commissioner, plus the "grossly inadequate purchase price paid at the execution sale, which itself shocks the conscience of the court, constitute grounds to set the sale aside and to set the judgment aside." Finally, the court found that as a matter of law, Jacoby was not a bona fide purchaser for value because he bought the property knowing about the pending trustee's sale and that the Bank held a valid first lien on the property. The Intervenors then sought attorneys' fees against Jacoby in the amount of $46,365 pursuant to A.R.S. § 33-1807(B) and the CC & Rs, and against his attorneys pursuant to Rule 11.[3]
¶ 14 Before a final judgment was entered, the HOA filed a motion to consolidate the lien foreclosure action with the quiet title action. It alleged that before determining that a fraud on the court had been committed, the court should have given the HOA and its attorneys an opportunity to respond. Jacoby joined in the motion and filed a motion to stay the quiet title action pending potential consolidation. The Intervenors opposed both motions. Judge Burke granted Jacoby's motion to stay the proceedings "pending potential consolidation" by Commissioner Kirby Kongable in the lien foreclosure action.

The Consolidated Action
¶ 15 Prior to consolidation, the HOA filed a hearing memorandum in the lien foreclosure action. The HOA asked Commissioner Kongable to reconsider Judge Burke's July 22, 2009 order and requested reinstatement of the default judgment. On November 17, 2009, the court granted the motion to consolidate. On November 25, 2009, the Intervenors filed a notice of change of judge pursuant to Rule 42(f)(A). They also moved to stay the proceedings to allow them to challenge the consolidation order in our court by special action. Although the Intervenors sought special action relief on the consolidation order, this court declined special action jurisdiction. The Intervenors responded to the motion to reinstate judgment and requested Rule 11 sanctions. On December 10, 2010, Commissioner Kongable denied the Intervenors' notice of change of judge.
¶ 16 After oral argument, Commissioner Kongable granted the HOA's motion for reconsideration and reinstatement of the default judgment. He expressed "concern[s]" over the Interveners' standing to assert their counterclaims, the timeliness of their Rule 60(c) challenge to the default judgment, and the failure of the Intervenors to join the necessary parties in the quiet title action. He stated "that the real guts of this and the real narrow issue of this is the fraud claim." The court noted that Appellees had "enough of a legal argument, [although] it may not be a winning argument" that "it's not fraud to propose a judgment that extinguishes the deeds of trust on the facts of this case." He explained that the sole basis for Judge Burke's ruling was that there was a fraud committed on the court, but because there was a legitimate argument on both sides, he did not see such fraud, and that in his view, *1175 Judge Burke's conclusion went "too far." Commissioner Kongable indicated he would consider the issue of attorneys' fees, but that he was not making any rulings on the merits of the remaining issues in the quiet title action.
¶ 17 On December 15, 2009, the court entered a final order consolidating the cases and reinstating the judgment on foreclosure.[4] The court included a Rule 54(b) finding in these orders. The Intervenors timely appealed from those orders (1 CA-CV 10-0142).
¶ 18 The HOA then sought an award of attorneys' fees and costs against the Intervenors and their attorneys. On February 2, 2010, Commissioner Kongable entered an order awarding attorneys' fees in the amount of $8,710 to the HOA and against the Intervenors and their counsel. The court found that their actions were "not well grounded in fact or warranted by existing law or a good faith argument for extension, modification or reversal of existing law," were "interposed for improper purposes and without substantial justification, resulting in harm" to the HOA and "harassed the [HOA] and expanded previously closed proceedings in violation of Rule 11, ARCP, and A.R.S. §§ 12-349 and 350." The Intervenors timely appealed from that order (1 CA-CV 10-0235). We consolidated the appeals. We have jurisdiction pursuant to A.R.S. § 12-2101(B)(2003).

DISCUSSION
¶ 19 On appeal, the Intervenors argue that Commissioner Kongable erred in (1) consolidating the quiet title action with the lien foreclosure action; (2) denying their notice of change of judge; (3) reconsidering and reversing Judge Burke's order setting aside the default judgment on foreclosure for a fraud on the court and reinstating the default judgment; and (4) awarding attorneys' fees in favor of the HOA and against the Intervenors and their attorneys.

Consolidation of Cases
¶ 20 The Intervenors argue that the court abused its discretion in consolidating the quiet title action with the lien foreclosure action because the latter was not a pending action. We review an order consolidating cases for an abuse of discretion. Hancock v. McCarroll, 188 Ariz. 492, 495, 937 P.2d 682, 685 (App.1996).
¶ 21 Rule 42(a) provides in part that "[w]hen actions involving a common question of law or fact are pending before the court, it may order . . . all the actions consolidated, and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Here, as in Hancock, the actions involve common questions of fact and law, arise out of related transactions, and involve the same or related parties. Furthermore, after Judge Burke set aside the default judgment in the lien foreclosure action, the judgment was no longer final and the action was subject to consolidation with the pending quiet title action. Consolidation was therefore proper. Hancock, 188 Ariz. at 495, 937 P.2d at 685.
¶ 22 Moreover, consolidating the cases resolved Commissioner Kongable's concern and Appellees' assertion that the HOA should have been joined as a necessary party to the quiet title action in which the Intervenors sought declaratory relief to collaterally attack the default judgment. See Cooper v. Commonwealth Title of Ariz., 15 Ariz.App. 560, 562-63, 489 P.2d 1262, 1264-65 (1971) (in independent declaratory judgment action filed by alleged owner of property that collaterally attacked a default judgment on foreclosure, all parties to former action must be before court). There was no abuse of discretion in consolidating the cases.

Change of Judge as a Matter of Right
¶ 23 The Intervenors next argue that the court erred in refusing to honor their timely notice of change of judge as a matter of right. Ariz. R. Civ. P. 42(f)(A). The denial of a peremptory notice of change of *1176 judge can only be reviewed by special action. Taliaferro v. Taliaferro, 186 Ariz. 221, 222, 921 P.2d 21, 22 (1996); Anderson v. Contes, 212 Ariz. 122, 124, ¶ 4, 128 P.3d 239, 241 (App.2006). Although the Intervenors sought special action relief challenging the consolidation order, they did not seek such relief challenging the court's denial of the notice of change of judge. Therefore, we do not address this issue.

Reconsideration and Reversal of Judge Burke's Order
¶ 24 The Intervenors next argue that Commissioner Kongable should not have reconsidered Judge Burke's order because that constituted an unwarranted horizontal appeal. They further argue that Commissioner Kongable's order was erroneous because the HOA's interpretation of the applicable statute and the CC & R's was plainly wrong, that its legal position on this issue was patently unreasonable, and that the HOA's attorneys committed a fraud on the court.

1. Reconsideration by Horizontal Appeal
¶ 25 "Arizona courts have stated on numerous occasions that one trial judge should not reconsider the decision of another in the absence of new circumstances." Hibbs v. Calcot, Ltd., 166 Ariz. 210, 214, 801 P.2d 445, 449 (App.1990). The practice "has been consistently criticized and disapproved of by our courts," State v. Kangas, 146 Ariz. 155, 158, 704 P.2d 285, 288 (App.1985), because horizontal appeals "waste judicial resources by asking two judges to consider identical motions and because they encourage `judge shopping.'" Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II, 176 Ariz. 275, 279, 860 P.2d 1328, 1332 (App.1993). However, a judge may reconsider the ruling of another judge if "the first decision renders it manifestly erroneous or unjust or when a substantial change occurs in essential facts or issues, in evidence, or in the applicable law." Id. New circumstances may include "newly-discovered or previously unavailable" evidence. Hibbs, 166 Ariz. at 214, 801 P.2d at 449.
¶ 26 Here, new circumstances existed because the HOA became a party to the action as a result of the consolidation. The HOA's attorneys could present evidence and argument not made available to Judge Burke concerning whether they had committed a fraud upon the court. This justified re-examination of Judge Burke's order by Commissioner Kongable.

2. Reversal of Judge Burke's Order
¶ 27 The Intervenors argue that under the plain language of A.R.S. § 33-1807(B) and sections 7.8 and 7.9 of the CC & Rs, the lien arising from the first deed of trust had priority over the assessment lien and could not be foreclosed by it. They contend that a lien arising under a "first deed of trust" or "first mortgage" is superior to any assessment lien, regardless of when it is recorded.
¶ 28 The HOA responds that the lien arising from the Bank's deed of trust was subordinate to the assessment lien and could be foreclosed by it. The HOA asserts that a deed of trust "only becomes a `first deed of trust' by being first-in-time or, in other words, recorded prior to any other lien interest." The HOA reasons that pursuant to A.R.S. § 33-1807(E) and the CC & Rs, the assessment lien was perfected upon the recording of the CC & Rs in 2003 and thus had priority over the first deed of trust recorded on June 8, 2006. It also argues that section 7.9 of the CC & Rs, which subordinates the assessment lien to a "first mortgage," does not apply because mortgages and deeds of trust are "distinct financing instruments" and "there has never been a mortgage on the property."
¶ 29 Jacoby does not adopt the HOA's interpretation but argues that material issues of fact exist as to the validity of Orlandini's title because of the unrecorded and allegedly defective assignments of the first deed of trust. He claims that Judge Burke should not have entered summary judgment in favor of the Intervenors and that Commissioner Kongable was correct in reversing that order and reinstating the default judgment.
¶ 30 The interpretation of a statute is a question of law. Rowland v. Kellogg *1177 Brown & Root, Inc., 210 Ariz. 530, 532, ¶ 5, 115 P.3d 124, 126 (App.2005). "We review de novo the interpretation of a statute" and in doing so, "our foremost goal is to discern and give effect to legislative intent." Logan v. Forever Living Prods. Int'l, 203 Ariz. 191, 193, ¶ 8, 52 P.3d 760, 762 (2002) (citations omitted). To that end, we interpret the language of the statute "to give it a fair and sensible meaning." Walter v. Wilkinson, 198 Ariz. 431, 432, ¶ 6, 10 P.3d 1218, 1219 (App. 2000). We consider individual sections of a statute in the context of the whole statute, Burlington N. & Santa Fe Ry. Co. v. Ariz. Corp. Comm'n, 198 Ariz. 604, 607, ¶ 15, 12 P.3d 1208, 1211 (App.2000), and construe statutory provisions in light of the entire statutory scheme "so they may be harmonious and consistent." State v. Flynt, 199 Ariz. 92, 94, ¶ 5, 13 P.3d 1209, 1211 (App.2000) (citation omitted). We may also look to the policy behind the statute and to its legislative history. State v. Takacs, 169 Ariz. 392, 395, 819 P.2d 978, 981 (App.1991).
¶ 31 CC & Rs constitute a contract between property owners as a whole and individual lot owners, and contract interpretation is a question of law, which we review de novo. Ahwatukee Custom Estates Mgmt. Assoc. Inc. v. Turner, 196 Ariz. 631, 633-34, ¶ 5, 2 P.3d 1276, 1278-79 (App.2000). In interpreting CC & Rs, "the language used will be read in its ordinary sense, and the restriction . . . will be construed in light of the circumstances surrounding its formulation, with the idea of carrying out its object, purpose and intent." Powell v. Washburn, 211 Ariz. 553, 557, ¶ 16, 125 P.3d 373, 377 (2006) (citation omitted). We are not bound by the "strict and technical meaning of the particular words" in the declaration. Id. at 556, ¶ 10, 125 P.3d at 376.
¶ 32 Under A.R.S. § 33-1807(A), a homeowners' association "has a lien on a unit for any assessment levied against that unit from the time the assessment becomes due." This subsection also provides that the lien "may be foreclosed in the same manner as a mortgage on real estate but may be foreclosed only if the owner has been delinquent in the payment of monies secured by the lien." Section 33-1807(E) specifies that "[r]ecording of the declaration constitutes record notice and perfection of the lien for assessments. . . [and] [f]urther recordation of any claim of lien for assessments under this section is not required."
¶ 33 Section 33-1807(B) provides:
A lien for assessments . . . is prior to all other liens, interests and encumbrances on a unit, except:

1. Liens and encumbrances recorded before the recordation of the declaration.
2. A recorded first mortgage on the unit, a seller's interest in a first contract for sale pursuant to chapter 6, article 3 of this title on the unit recorded prior to the lien arising pursuant to subsection A of this section or a recorded first deed of trust on the unit.

3. Liens for real estate taxes and other governmental assessments or charges against the unit.
(emphasis added) (footnote omitted). Section 7.8(b) of the CC & Rs creates an assessment lien on each lot and provides that "[s]uch lien shall have priority over all liens or claims created subsequent to the recordation of the claim of lien, except only tax liens for real property taxes and liens, which are specifically described in Section 6.9." Although the CC & Rs contain no Section 6.9, Section 7.9 provides in part that "the lien of the Assessment (s) provided for herein shall be subordinate to the lien of any first mortgage." (Emphasis added).
¶ 34 Under the plain language of A.R.S. § 33-1807(B)(2), the word "first" in "first deed of trust" (or "first mortgage") denotes the order in which deeds of trust are recorded on property; it does not require that a deed of trust be recorded first in time relative to other recorded instruments to be the "first deed of trust." See Black's Law Dictionary 1027 (7th ed. 1999) (defining a "first mortgage" as "[a] mortgage that is senior to all other mortgages on the same property.") This subsection clearly means that an assessment lien is subordinate to a recorded first deed of trust without regard to when the two instruments were recorded. See In re Reece, 274 B.R. 515, 520, n. 12 (Bankr.Ariz.2001) (noting that under Arizona *1178 law, a recorded first mortgage or deed of trust has priority over an HOA lien); BA Mortg., LLC v. Quail Creek Condo. Ass'n, Inc., 192 P.3d 447, 450 (Colo.App.2008) (with one statutory exception, later recorded first deed of trust is a senior lien with priority over an assessment lien created by earlier recorded declaration).
¶ 35 We reject the HOA's strained interpretation of A.R.S. § 33-1807(B)(2) that to be a "first deed of trust," the deed of trust must be "first-in-time," i.e., recorded before the assessment lien is perfected under A.R.S. § 33-1807(E). Section 33-1807(E) simply describes how an assessment lien is perfected, while § 33-1807(B) sets forth the priorities of various liens. Reading §§ 33-1807(B)(2) and 33-1807(E) together reflects the legislature's intent to give priority to a recorded first deed of trust over an earlier perfected HOA assessment lien, regardless of its recordation date. Division Two of this court has recently rejected the identical argument made by Maxwell & Morgan in a similar lien priority case, finding that the Association's interpretation "contradicts the statute's plain meaning" and would "render § 33-1807(B)(2) superfluous." See Villa De Jardines Ass'n v. Flagstar Bank, FSB, 227 Ariz. 91, ___, 253 P.3d 288, 292 (App.2011).[5]
¶ 36 Also, the legislative history of the statute supports our interpretation. Prior to 1997, § 1807(B)(2) provided that an assessment lien had priority over all other liens except any "consensual mortgage or deed of trust on the unit recorded before the date on which the assessment sought to be enforced became delinquent". In 1997, that subsection was amended to provide that the assessment lien had priority over all other liens on the unit except "a recorded first mortgage" or "recorded first deed of trust." 1997 Ariz. Sess. Laws Ch. 40 § 7 (1st Reg. Sess.). The purpose of this amendment was to "[r]emove[ ] the requirement that a first mortgage or deed of trust [in a planned community] must be recorded before the date on which the assessment sought to be enforced became delinquent in order to come prior to a lien of an association." (Senate Revised Fact Sheet for HB 2495, March 18, 1997). In 1999, § 1807(B)(2) was amended to add as a priority over an assessment lien, a seller's interest in a first contract for sale on a unit recorded prior to the lien and a recorded "first" deed of trust on the unit. 1999 Ariz. Sess. Laws Ch. 231 § 2 (1st Reg. Sess.). Thus, the legislative history reflects the legislature's intent to give lien priority to a first deed of trust over an earlier perfected HOA assessment lien.
¶ 37 Further, the HOA's interpretation of the statute has practical implications that are absurd. See State v. Affordable Bail Bonds, 198 Ariz. 34, 37, ¶ 13, 6 P.3d 339, 342 (App. 2000) (we will give statutes a "sensible construction that accomplishes the legislative intent and which avoids absurd results"). If an assessment lien is perfected when the CC & R's are recorded under § 33-1807(E) without further recordation of a claim of lien, an assessment lien would almost always have priority over a first mortgage or first deed of trust, which is typically obtained and recorded after the CC & R's are recorded. As Judge Burke noted at the hearing on the parties' motions in the quiet title action, under this interpretation, "there wouldn't be a loan made on a condominium . . . if they couldn't be in first position over an HOA lien." We do not believe the legislature intended such a result.
¶ 38 We also reject the HOA's implausible interpretation of section 7.9 of the CC & Rs that a first deed of trust does not have priority over an assessment lien because that section only refers to a first mortgage. "[A] valid statute is automatically part *1179 of any contract affected by it, even if the statute is not specifically mentioned in the contract." Higginbottom v. State, 203 Ariz. 139, 142, ¶ 11, 51 P.3d 972, 975 (App.2002). Under A.R.S. § 33-805 (2007), "statutes of this state which refer to mortgages as security instruments are deemed to also include deeds of trust, unless the context otherwise requires."
¶ 39 More importantly, the HOA's interpretation of 7.9 is overly literal and hyper-technical as the terms "deed of trust" and "mortgage" are normally used interchangeably. See Olympic Fed. Sav. & Loan Ass'n v. Regan, 648 F.2d 1218, 1221 (9th Cir.1981) (noting that "security interests represented by deeds of trust and those evidenced by mortgage liens are treated as if they were legally identical"); Brand v. First Fed. Sav. & Loan Ass'n of Fairbanks, 478 P.2d 829-831 (Alaska 1970) (stating that "a deed of trust is `a mortgage in effect,' being only a somewhat different device for accomplishing the same purpose, creating a security interest in land"). We therefore conclude that under A.R.S. § 33-1807(B) and the CC & Rs, the first deed of trust on the property has priority over and is senior to the HOA assessment lien.[6]
¶ 40 The Intervenors next argue that the attorneys at Maxwell & Morgan involved in this case committed a fraud upon the court by obtaining a default judgment based on representations they knew to be false. They ask this court to reverse Commissioner Kongable's order reinstating the default judgment, and affirm Judge Burke's order setting aside the judgment.
¶ 41 The basis of Commissioner Kongable's ruling was that the HOA's attorneys presented a "legitimate" legal argument supporting the HOA's position and therefore, as a matter of law, could not have committed a fraud upon the court. We disagree. The HOA's interpretations of the statute and the CC & Rs are not supportable on any legitimate ground. Its arguments are specious, legally and logically unsound, and are so contrived as to be little more than sophistry. Because Commissioner Kongable's ruling was based upon a false premise, namely that the HOA had a defensible position, he reached an incorrect conclusion.
¶ 42 Further, we agree with the Intervenors that the HOA's attorneys obtained the default judgment by perpetrating a fraud upon the court as that term is defined and that the judgment can therefore be set aside under either Rule 60(c)(6) or in an independent action. When a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court, this constitutes a fraud upon the court, and the court has the power to set aside the judgment at any time. Ivancovich v. Meier, 122 Ariz. 346, 349, 595 P.2d 24, 27 (1979). A fraud upon the court is perpetrated "by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases." In re Intermagnetics Am., Inc., 926 F.2d 912, 916 (9th Cir.1991) (quoting J. Moore and J. Lucas, Moore's Federal Practice ¶ 60.33, at 515 (2nd Ed. 1978)).
¶ 43 As the United States Supreme Court explained in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 246, 64 S.Ct. 997, 88 L.Ed. 1250 (1944), overruled on other grounds, Standard Oil of Cal. v. United States, 429 U.S. 17, 97 S.Ct. 31, 50 L.Ed.2d 21 (1976), the district court is permitted to set aside a judgment obtained by a fraud *1180 upon the court pursuant to Federal Rule 60(b) (the equivalent of Rule 60(c)), without regard to time limits because such fraud harms the "integrity of the judicial process," and is a "wrong against the institutions set up to protect and safeguard the public." There, the Court granted relief even though the complainant had waited nine years to bring the action and knew at the time that fraudulent evidence may have been introduced during the first proceeding. See also Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1130, 1133 (9th Cir.1995) ("One species of fraud upon the court occurs when an `officer of the court' perpetrates fraud affecting the ability of the court . . . to impartially judge a case," and a judgment obtained by such fraud can be set aside even if the opposing party was not diligent in uncovering it). Further, under Arizona Supreme Court Rule 42, E.R. 3.3(a), a "lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . . [or] fail to disclose to the tribunal legal authority . . . known to the lawyer to be directly adverse to the position of the client." In an ex parte proceeding, "a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse." Ariz. R. Sup.Ct. 42, ER 3.3(d).
¶ 44 Here, the HOA's attorneys committed a fraud upon the court that justified setting aside the default judgment under Rule 60(c)(6). First, the lien foreclosure complaint stated that there were two deeds of trust on the property but did not disclose that one of them was a first deed of trust. The complaint referred to § 33-1807(A) regarding creation of an assessment lien, and § 33-1807(H) regarding attorneys' fees but did not refer to § 33-1807(B)(2) which plainly subordinates the assessment lien to a first deed of trust. The complaint falsely stated that the assessment lien had priority over all other liens. Second, the judgment of foreclosure that the HOA lawyers presented to Commissioner McCoy to enter did not reflect that there was a first deed of trust on the property, nor did it refer to § 33-1807(B)(2) but merely stated that the assessment lien had priority over all other liens and falsely stated that the default judgment foreclosed all other liens, including the first deed of trust. Third, although the complaint alleged that the CC & Rs gave the HOA a lien on the property which was perfected upon recordation, it did not refer to section 7.9 of the CC & Rs, which gave the first deed of trust priority over the assessment lien. Finally, to obtain the default judgment, the attorney representing the HOA at the default hearing avowed to the court that the allegations set forth in the complaint and the proffered judgment of foreclosure were true and correct.[7] These material omissions and misrepresentations made in an ex parte proceeding prevented the commissioner from reaching an informed and impartial decision regarding entry of the default judgment, made it impossible for the court to properly perform its function of adjudicating the case in a fair and lawful manner, and harmed the integrity of the judicial process and the administration of justice.
¶ 45 We conclude that the above-described conduct by the HOA's attorneys was not the inadvertent result of either a misunderstanding of the relevant law by the HOA's attorneys or their excusable over-zealousness on behalf their client. We reach this conclusion because of the January 2, 2008 letter from Warren Nikolaus at Maxwell & Morgan to the Bank's attorney. Although it was written after the default judgment was entered, the letter clearly reflects that the HOA's attorneys were well aware that a recorded first deed of trust or first mortgage on the property had priority over the HOA assessment lien and could not be foreclosed by the HOA. The letter also explains that the Bank took no immediate action to set aside the default judgment and instead foreclosed its lien and sold the property to Orlandini, because the Bank reasonably believed its interests and those of its successors were not at risk. Accordingly, we reverse Commissioner's Kongable's order reversing Judge *1181 Burke's order and reinstating the default judgment nunc pro tunc.[8]
¶ 46 The HOA additionally argues that the Intervenors lack standing to assert their counterclaim and that necessary parties have not been joined in the action. Jacoby made these arguments in his motion to dismiss. Judge Burke rejected them. As mentioned earlier, Jacoby also argues that there are unresolved material issues of fact concerning the validity of the assignments of the first deed of trust to Alliance Bancorp and the Bank. The Intervenors dispute these claims. Commissioner Judge Kongable, however, made no rulings on these issues, and Judge Burke's ruling on the motion to dismiss is not before this court. Therefore, a resolution of such questions must abide a remand to the court in the quiet title action.

Attorneys' Fees
¶ 47 Commissioner Kongable awarded the HOA its attorneys' fees as a sanction against the Intervenors under A.R.S. §§ 12-349, -350 (2003) and against Ari Ramras and Ramras Law Offices under Rule 11 based on his findings that their actions were not well grounded in fact or law, were interposed for improper purposes and without substantial justification, resulting in harm to the HOA, and constituted harassment. On appeal, the HOA claims that a fee award is required under A.R.S. § 33-1807(H) ("A judgment or decree in any action brought under this section shall include costs and reasonable attorney fees for the prevailing party."), and that the fee award is proper under A.R.S. § 12-341.01 (2003) as the matter arises out of contract. The HOA also asserts that the Interveners' "conduct below was frivolous and in bad faith" because of their "lack of standing, their belated Collateral Attack on the Judgment, and their failure to join all necessary parties before Judge Burke," and that Commissioner Kongable properly awarded fees to the HOA. We disagree.
¶ 48 First, A.R.S. § 33-1807(H) does not apply. Although this case involves the lien foreclosure action, neither the Intervenors nor the HOA sought and obtained a judgment of foreclosure against the other. Second, A.R.S. § 12-341.01 does not apply because this matter does not arise out of a contract dispute about the CC & Rs; rather it arises out of a dispute about lien priorities under A.R.S. § 33-1807. See Hanley v. Pearson, 204 Ariz. 147, 151, ¶¶ 17-18, 61 P.3d 29, 33 (App.2003) (essential dispute involved trustee's obligations to apply proceeds of trustee's sale under A.R.S. § 33-812(A) and issue did not arise out of contract.)
¶ 49 Finally, under A.R.S. § 12-349(A)(1), a court "shall assess" an award of fees against a party who brings a claim without substantial justification. Under A.R.S. § 12-349(F), a claim "without substantial justification" is one that "constitutes harassment, is groundless and is not made in good faith." Each of these three elements must be proven by a preponderance of the evidence and "the absence of even one element render[s] the statute inapplicable." Johnson v. Mohave Cnty., 206 Ariz. 330, 334, ¶ 16, 78 P.3d 1051, 1055 (App.2003). Section 12-350 requires the trial court to set forth "specific reasons for the award" of fees under § 12-349. Id. at § 17. We review an award under § 12-349 to determine if there is sufficient evidence to support the finding of a frivolous claim or defense. Phoenix Newspapers, Inc. v. Dep't of Corrs., 188 Ariz. 237, 243, 934 P.2d 801, 807 (App.1997).
*1182 ¶ 50 Based on our review of the record, we must disagree with the trial court's holding that the Intervenors' positions on procedural matters were groundless, not made in good faith and constituted harassment of the HOA. Moreover, as explained above, the Intervenors' underlying arguments for lien priority were correct, whereas the HOA's arguments were wholly unsupportable.[9] Therefore, the court's award of attorneys' fees to the HOA pursuant to A.R.S. §§ 12-349 and -350 was not supported by sufficient evidence.
¶ 51 The Intervenors now request attorneys' fees incurred on appeal pursuant to A.R.S. § 33-1807(H), and the HOA requests attorneys' fees pursuant to the CC & Rs, A.R.S. §§ 12-341.01, -342 and 33-1807(H). As explained above, none of the parties is entitled to attorneys' fees on the statutory grounds requested. Under section 7.8(b) of the CC & Rs, the Association is entitled to attorneys' fees from a lot owner in connection with "all costs of collection" and enforcement of a lien against a defaulting owner. See McDowell Mt. Ranch Commty. Ass'n v. Simons, 216 Ariz. 266, 267, ¶ 1, 165 P.3d 667, 668 (App.2007) (homeowners' association entitled to award of attorneys' fees to enforce CC & Rs under provision in declaration). But this provision does not apply here because the Intervenors are not defaulting lot owners.
¶ 52 Jacoby requests attorneys' fees pursuant to "contract and statute," but does not specify either the applicable contract provision or statute. He is not entitled to attorneys' fees because he does not provide a substantive basis for a fee award. See Bed Mart, Inc. v. Kelley, 202 Ariz. 370, 375, ¶ 24, 45 P.3d 1219, 1224 (App.2002). Consequently, we do not award attorneys' fees to any party. We award the Intervenors their costs on appeal subject to compliance with Arizona Rules of Civil Appellate Procedure 21.

CONCLUSION
¶ 53 For the foregoing reasons, we affirm Commissioner Kongable's orders consolidating the quiet title action with the lien foreclosure action and denying the requested change of judge. However, we vacate his orders reinstating the default judgment of foreclosure nunc pro tunc and awarding attorneys' fees and costs to the HOA. We remand the remaining matters to the trial court for further proceedings consistent with this opinion.
CONCURRING: DONN KESSLER, Presiding Judge and DIANE M. JOHNSEN, Judge.
NOTES
[1] In response to correspondence from Draper's attorney (later Jacoby's attorney) regarding the pending trustee's sale and Draper's claim that the judgment on foreclosure extinguished the first deed of trust, the attorney for the Bank wrote that despite "the very broad language" in the judgment, "you are certainly aware that an HOA lien cannot prioritize a first lien Deed of Trust." He continued, "I have cautioned Mr. Maxwell's firm in the past in utilizing such broad language, as I anticipated the type of problems that have arisen in this file."
[2] Rule 60(c)(4) permits the court, upon motion, to set aside a void judgment. A motion based on this subsection may be filed at any time. Martin v. Martin, 182 Ariz. 11, 14, 893 P.2d 11, 14 (App.1994). Rule 60(c)(6) permits the court to set aside a judgment "for any other reason justifying relief from the operation of the judgment." A motion based on this subsection must be filed "within a reasonable time."
[3] The record reflects that Judge Burke provided a copy of his July 22, 2009 minute entry to the State Bar of Arizona for consideration of possible ethical violations. Pursuant to our ethical obligations, we similarly are providing the State Bar with a copy of this opinion.
[4] The court denominated the order reinstating the default judgment on foreclosure as being made nunc pro tunc, apparently in order to ensure that the HOA's interests would at no time lapse.
[5] We also reject the nonsensical reasoning presented at oral argument by the HOA's attorneys that under subsection (B)(2), "or" means "and." Thus, they claim that the phrase, "on the unit recorded prior to the lien arising pursuant to subsection A of this section" modifies not only that portion of the subsection which refers to a "seller's interest in a first contract for sale," but also modifies that portion of the subsection which refers to a recorded first mortgage or a recorded first deed of trust. The obvious meaning of the subsection is that an assessment lien arising under A.R.S. § 33-1807(A) is subordinate to a seller's interest in a first contract of sale only if the seller's first contract for sale is recorded prior to the assessment lien. The requirement of prior recordation does not apply to a first mortgage or a first deed of trust.
[6] There appears to be a conflict between A.R.S. § 33-1807(A), which states that the association has a lien on a unit for any assessment levied against that unit "from the time the assessment becomes due," and A.R.S. § 33-1807(E), which provides that "[r]ecording of the declaration constitutes record notice and perfection of the lien" and that "[f]urther recordation of any claim of lien for assessments . . . is not required." To further complicate the issue, under section 7.8(b) of the CC & Rs, "each default [of an assessment] shall constitute a separate basis for a demand or claim of lien or a lien" and if the default is not cured within ten days, "the Association may elect to file such claim of lien on behalf of the Association against the Lot of the Defaulting Owner." Although this section appears to conflict with A.R.S. § 33-1807(A),(E), if there is conflict between a statute and the CC & Rs, the statute controls. See Thaler v. Household Fin. Corp., 80 Cal.App.4th 1093, 95 Cal.Rptr.2d 779, 785 (2000). We need not, however, address these apparent conflicts here or consider whether a recorded deed of trust, other than a recorded first deed of trust, can have priority over an assessment lien.
[7] In finding a fraud on the court, Judge Burke relied in part on the wording in the motion and affidavit for entry of default that the HOA was merely seeking monetary relief, which was contrary to the relief it was actually seeking. We do not, however, base our decision on that ground.
[8] Draper, who purchased the property at the trustee's sale, is not a party to the consolidated action. We note that under Arizona law, "the purchaser at a foreclosure sale of a junior lien takes subject to all senior liens . . . [and] [a]lthough the purchaser does not become personally liable on the senior debt . . . the purchaser must pay it to avoid the risk of losing his newly acquired land to foreclosure by the senior lienholder." Mid Kansas Fed. S. & L. Ass'n of Wichita v. Dynamic Dev. Corp., 167 Ariz. 122, 130, 804 P.2d 1310, 1318 (1991) (internal citations omitted). "Therefore, the land becomes the primary fund for the senior debt, and the purchaser is presumed to have deducted the amount of the senior liens from the amount he bids for the land." Id. (citation omitted) (footnote omitted). See also Hanley v. Pearson, 204 Ariz. 147, 150, ¶ 13, 61 P.3d 29, 32 (App.2003) (purchaser at a trustee's sale is "expected and presumed to take into account existing senior liens in calculating an appropriate bid for the property"); Midyett v. Rennat Props., Inc., 171 Ariz. 492, 494, 831 P.2d 868, 870 (App.1992) (title taken by purchaser at a judicial sale foreclosing a junior lien is subject to a senior lien).
[9] In Villa De Jardines, Division Two of this court upheld the trial court's imposition of sanctions against the Association under Rule 11, Ariz. R. Civ. P. because it "attempted to urge a meaning of the statute that contradicted its plain language," its position "was not objectively reasonable," it "pressed an interpretation of the statute unsupported by any authority," and it "apparently failed to recognize any incongruity with its position and the law." Id. at ___, ¶¶ 18-19, 253 P.3d at 294.