NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

WILLIAM A. LINK, *Plaintiff/Appellee,*

*v.*

JOSE CARLOS VALDEZ-ACOSTA, et al., *Defendants/Appellants.*

No. 1 CA-CV 21-0436
FILED 5-17-2022

---

Appeal from the Superior Court in Maricopa County
No.  CV2020-013960
CV2020-015331
CV2020-094877
The Honorable David J. Palmer, Judge

**AFFIRMED**

---

COUNSEL

Zapata Law PLLC, Chandler
By Julio M. Zapata
*Counsel for Plaintiff/Appellee*

Jose Carlos Valdez-Acosta and Griselda Molina Valdez, Phoenix
*Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Michael J. Brown joined.

---

**C R U Z**, Judge:

¶1        Jose Carlos Valdez-Acosta and Griselda Molina Valdez appeal the superior court's order setting aside a stipulated judgment on the grounds of fraud.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

¶2        These consolidated cases have a "long and tortured" history.  They stem from a conversion action filed a decade ago, CV2012-004104 ("the Conversion Action"), in which appellee William A. Link obtained a money judgment, after a jury trial, against Valdez and Molina for about $45,000.

¶3        In 2013, while the Conversion Action was still pending, Valdez's brother-in-law, Javier Gonzalez Vivar, recorded a quit-claim deed purporting to transfer Valdez and Molina's interests in real property in Buckeye to himself.  In 2017, an entity called Always Inc., the president of which is Valdez and Molina's daughter, recorded a quit-claim deed purporting to transfer all of Vivar's interests in the Buckeye property to Always Inc.

¶4        In 2017, Link filed a fraudulent conveyance action, CV2017-094880 ("the Fraudulent Conveyance Action"), against Valdez and Molina.  Link obtained a judgment in the Fraudulent Conveyance Action that voided the 2013 and 2017 quit-claim deeds as fraudulent transfers of the Buckeye property and permitted Link to execute on the Buckeye property to satisfy the judgment in the Conversion Action.

¶5        In February 2019, Link purchased the Buckeye property at a sheriff's sale, and the sheriff recorded a certificate of sale of the Buckeye property.  Meanwhile, an individual named DaMarcus Woods recorded a warranty deed in March 2019 purporting to convey the Buckeye property from Always Inc. to Woods.  Given the February 2019 recorded certificate of sale, in August 2019, the sheriff recorded a sheriff's deed conveying to

Link any interests in the Buckeye property held by Valdez, Molina, Vivar, and Always Inc.

¶6 Later that same month, the United States Bankruptcy Court (the "Bankruptcy Court") in Valdez and Molina's then-pending bankruptcy proceeding entered an order granting abandonment of the Buckeye property from the bankruptcy estate because the trustee's interest in the real property was not of value or benefit to the estate.

¶7 In September 2019, Woods recorded an "affidavit of ownership" asserting that he was the owner of the Buckeye property. Woods also recorded disclaimer deeds stating that Valdez and Molina had no interest or claims to the Buckeye property and that Woods had acquired title to the Buckeye property.

¶8 In October 2019, Valdez, Molina, Woods, and Link made various representations about the Buckeye property to the Bankruptcy Court at a hearing in Valdez and Molina's bankruptcy. Molina avowed to the Bankruptcy Court that she and Valdez did not own the Buckeye property. The Bankruptcy Court then denied any relief relating to the Buckeye property based on the finding that the bankruptcy estate did not own the property, and that the state court would need to address any conflict between Link and Woods regarding the property.

¶9 In November 2019, Woods recorded an amended "affidavit of ownership" again asserting he owned the Buckeye property. Later that same month, Link filed an action against Woods to quiet title to the Buckeye property in Link's name, CV2019-097315 ("the First Quiet Title Action"). In April 2020, the court in the First Quiet Title Action granted summary judgment and quieted title to the Buckeye property in Link's name, noting specifically that the certificate of sale recorded by the sheriff vested title in Link. The court in the First Quiet Title Action also vacated and voided the March 2019 recorded warranty deed purporting to convey the Buckeye property from Always Inc. to Woods.

¶10 In June 2020, despite the judgment against him, Woods recorded a warranty deed purporting to grant title to the Buckeye property to Valdez and Molina. In August 2020, an entity known as Eagle Document Processing recorded a deed of trust purporting to state that Valdez and Molina owed Woods funds evidenced by a promissory note, and purportedly granted the Buckeye property from Valdez and Molina to Eagle Document Processing as "trustee."

¶11        In August 2020, Link then filed this quiet title action, CV2020-094877 (the "Second Quiet Title Action") against Valdez, Molina, Woods, and Eagle Document Processing to again quiet title to the Buckeye property. Link filed a motion for summary judgment in September 2020. In October 2020, Woods recorded a warranty deed in lieu of foreclosure, purporting that Valdez and Molina transferred title of the Buckeye property to Woods.

¶12        In November 2020, while Link's motion for summary judgment was pending in the Second Quiet Title Action, Woods filed a breach of contract and default of deed of trust action, CV2020-015331 ("the Breach of Contract Action") against Valdez and Molina, claiming they owed him money allegedly secured by the deed of trust on the Buckeye property. Woods, Valdez, and Molina then "stipulated" to a judgment in favor of Woods—whereby Woods could execute on the Buckeye property by a writ of execution—that the superior court entered in the Breach of Contract Action. Woods then filed in the Breach of Contract Action a writ of execution directing the sheriff to execute on the Buckeye property to satisfy the judgment in his favor.

¶13        Without knowledge of the Breach of Contract Action, the superior court in the Second Quiet Title Action granted summary judgment to Link, finding he had established sole ownership of the Buckeye property. Upon discovering the Breach of Contract Action, Link moved to set aside the stipulated judgment in that case as a fraud on the court. Link also filed a motion to consolidate the Breach of Contract Action and the Second Quiet Title Action, which the superior court granted. The court ultimately granted Link's motion to set aside the stipulated judgment in the Breach of Contract Action based on fraud, which Molina and Valdez appealed.

¶14        We have jurisdiction under Arizona Revised Statutes section 12-2101(A)(2).

## DISCUSSION

¶15        We review for abuse of discretion an order granting a motion to set aside a judgment based on fraud. *See City of Phoenix v. Geyler*, 144 Ariz. 323, 328 (1985). We review the record in the light most favorable to upholding the court's ruling. *See Ezell v. Quon*, 224 Ariz. 532, 534, ¶ 2 (App 2010). We limit the scope of our review to the court's rulings that "necessarily affect the validity of judgment from which an appeal has been taken." *Truck Ins. Exch. v. State Comp. Fund*, 138 Ariz. 116, 118 (App. 1983).

¶16        Valdez and Molina argue that because Link only sued Woods but not Valdez in the First Quiet Title Action, the judgment in that case only

quieted title against Woods. They assert that Link's First Quiet Title Action was an improper attempt to collect on the underlying debt that originated in the Fraudulent Conveyance Action against Valdez and Molina, which they claim they discharged in bankruptcy. Valdez and Molina also argue that Link committed fraud on the court by hiding the discharged status of the original debt and ask this court to vacate the judgment in the Fraudulent Conveyance Action. Appellants maintain they still own the Buckeye property, and that Woods could not convey property he never owned.

¶17 The scope of our review of the order setting aside the stipulated judgment in the Breach of Contract Action does not include review of the Fraudulent Conveyance Action, which Valdez and Molina untimely appealed in 2019. *See Truck Ins. Exch.*, 138 Ariz. at 118. Appellants make no substantive argument that the court abused its discretion in setting aside the stipulated judgment in the Breach of Contract Action on the grounds of fraud.

¶18 Further, as argued by Link, the record supports setting aside the stipulated judgment in the Breach of Contract Action on the grounds of fraud. The superior court can set aside a judgment based on fraud. Ariz. R. Civ. P. 60(d)(3). A judgment can be set aside "[w]hen a party obtains a judgment by concealing material facts and suppressing the truth with the intent to mislead the court." *Cypress on Sunland Homeowners Ass'n v. Orlandini*, 227 Ariz. 288, 299, ¶ 42 (App. 2011) (where complaint contained material omissions and false statements).

¶19 During the pendency of this Second Quiet Title Action, in which Link alleged that Valdez, Molina, Woods, and Eagle Document Processing had recorded a void document that improperly clouded his title to the Buckeye property, Woods filed the Breach of Contract Action against Valdez and Molina to encumber the Buckeye property that none of them owned. The record supports a finding that multiple statements in the Breach of Contract Action concealed material facts and suppressed the truth with intent to mislead the court into entering a fraudulent stipulated judgment.

¶20 First, Woods' complaint in the Breach of Contract Action alleged that "Valdez obtained title to the [Buckeye] property by Order of Abandonment" and referenced the warranty deed from Woods to Valdez. The order of abandonment by the trustee in Valdez and Molina's bankruptcy did not transfer title of the property to Valdez and Molina. The bankruptcy trustee abandoned the property as an estate asset because it had no value—presumably because Molina stated in the Bankruptcy Court

hearing that they did not own it. At that time, Link owned the Buckeye property because he purchased it at the sheriff's sale and the sheriff recorded the certificate of sale. Moreover, Woods' reference to the warranty deed purporting to convey the Buckeye property from Woods to Valdez misled the court about the ownership status. Woods knew the First Quiet Title Action had already quieted title to the property in Link's name, and yet Woods purposefully recorded a warranty deed purporting to convey the Buckeye property to Valdez and Molina.

¶21 Second, Woods' complaint in the Breach of Contract Action alleged that a security interest arose in favor of Woods in the amount of $117,323.55 by order of the United States Trustee in the Valdez/Molina bankruptcy. Woods knew at the time he made this allegation that Valdez and Molina did not own the Buckeye property, and he had no security interest in it, because the superior court had quieted title to it in favor of Link and that, by order of the court, Woods had no interest in the property. Moreover, the United States Trustee does not have the authority to properly declare that a security interest arose as a matter of law on the Buckeye property. In addition, at most, the trustee's final account and distribution report shows that Woods asserted a secured claim for $117,323.55, which was an "allowed claim" in the bankruptcy, $19,500 of which was a "scheduled claim." This statement does not, somehow, convey a security interest in the Buckeye property to Woods.

¶22 There are additional examples of allegations in the Breach of Contract Action complaint that show fraud on the court, but these two are the most significant and are sufficient for the court's ruling setting aside the stipulated judgment in the Breach of Contract Action. Woods, Valdez, and Molina then avowed to the superior court that they had "stipulated" to a judgment based on these same fraudulent statements.

¶23 We agree with Link that Woods, Valdez, and Molina made false statements and omissions to the superior court in the Breach of Contract action that fraudulently induced the court to sign the stipulated judgment, which they then used in an attempt to levy on the Buckeye property via a writ of execution. Based on our review of the record, we find no abuse of discretion in the ruling granting the motion to set aside the stipulated judgment in the Breach of Contract Action based on the procedural history of the various lawsuits, and the judicially noticed pleadings and facts contained in the other cause numbers, which the superior court concluded showed fraudulent filings and intent.

**CONCLUSION**

**¶24** For the foregoing reasons, we affirm the superior court's ruling. We award costs to Link upon compliance with ARCAP 21. Link also requests sanctions to deter Valdez and Molina's conduct and seeks various orders enjoining them from taking actions concerning the Buckeye property and voiding documents they recorded against the Buckeye property. ARCAP 25 governs our ability to issue sanctions, which may include contempt, dismissal, or withholding or imposing costs or attorneys' fees if this court determines that an appeal is frivolous. Link convincingly argues that Valdez and Molina's arguments on appeal are frivolous. Because we find that Valdez and Molina's appeal is based on issues unsupported by any reasonable theory, and because they completely fail to address the order from which they appeal, we sanction Valdez and Molina for filing a frivolous appeal and award Link attorneys' fees in an amount to be determined upon compliance with ARCAP 21. *See Ariz. Tax Rsch. Ass'n v. Dep't of Revenue*, 163 Ariz. 255, 258 (1989); *Price v. Price*, 134 Ariz. 112, 114 (App. 1982).



AMY M. WOOD • Clerk of the Court
FILED: AA

7