IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

────────────────────

TORTOSA HOMEOWNERS ASSOCIATION, AN ARIZONA NON-PROFIT
CORPORATION,
*Plaintiff,*


*v.*


DAVIS GARCIA, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY,
REPUTED OWNER,
*Defendant,*


MARICOPOLY, LLC,
*Intervenor/Appellant/Cross-Appellee*


*and*


DURABLE INVESTMENTS, LLC,
*Assignee/Appellee/Cross-Appellant.*


No. 2 CA-CV 2021-0114
Filed August 1, 2022

────────────────────

Appeal from the Superior Court in Pinal County
No. S1100CV201800379
The Honorable Jason R. Holmberg, Judge

**AFFIRMED**

────────────────────

COUNSEL

Law Offices of Kyle A. Kinney LLC, Scottsdale
By Kyle A. Kinney
*Counsel for Intervenor/Appellant/Cross-Appellee*

Legal AZ, Tempe
By Travis R. Campbell and Morgan Seegmiller
*Counsel for Assignee/Appellee/Cross-Appellant*

Mark Brnovich, Arizona Attorney General
By Valerie Marciano and Lena Kalkbrenner, Phoenix
*Counsel for Amicus Curiae Arizona Department of Housing, Administrator of Arizona Home Foreclosure Prevention Funding Corporation*

---

**OPINION**

Judge Espinosa authored the opinion of the Court, in which Presiding Judge Eckerstrom and Chief Judge Vásquez concurred.

---

E S P I N O S A, Judge:

¶1 Maricopoly LLC appeals from the trial court's order denying its request for disbursement of excess proceeds resulting from its purchase of property at a foreclosure sale. Durable Investments LLC cross-appeals the court's determination that A.R.S. § 33-727(B) mandates payment of such proceeds to all lienholders before payment to the debtor. For the reasons that follow, we conclude § 33-727(B) does not entitle a senior lienholder to the excess proceeds that the junior lien's foreclosure generates but nevertheless affirm the court's order.

**Factual and Procedural Background**

¶2 This appeal concerns real property in Pinal County previously owned by Davis Garcia, subject to a first position deed of trust held by U.S. Bank. In early 2018, Tortosa Homeowners Association sought to enforce its lien against Garcia's property through judicial foreclosure due to unpaid fees and assessments. The trial court entered a default judgment for Tortosa and ordered a foreclosure sale. In July 2019, Maricopoly purchased the property at a subsequent sheriff's sale, and after the judgment was satisfied, the remaining $72,749.35 were deposited with the court.

¶3 In 2020, both Durable—Garcia's assignee—and Maricopoly filed competing motions requesting payment of the excess proceeds from the foreclosure sale. Maricopoly asserted it was entitled to the remaining funds as assignee of U.S. Bank.[1] In a preliminary ruling on Durable's

---

[1]In June 2020, Maricopoly paid to U.S. Bank the full amount Garcia owed on the first deed of trust, and the lien on the property was released. In March 2021, Maricopoly offered a stipulated judgment between

request for a hearing, the trial court determined that § 33-727(B) "prohibits disbursement of any balance to the Judgment Debtor (or Assignee), unless there are no other liens, not just junior lienholders." After subsequent briefing and argument, the court granted Durable's request for the proceeds and denied Maricopoly's on the ground that it had "failed to provide any proof of assignment from U.S. Bank." The court thereafter entered a final order from which Maricopoly appealed, and Durable cross-appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

**Discussion**

¶4　　　　The issues raised in this appeal turn on the interpretation of § 33-727(B), which governs the distribution of excess proceeds following a foreclosure sale. It directs that "[i]f there are other liens on the property sold, or other payments secured by the same mortgage, they shall be paid in their order . . . and if there are no other liens the balance shall be paid to the mortgagor." § 33-727(B). Our review of the trial court's interpretation of the statute is de novo. *Bank of Am., N.A. v. Felco Bus. Servs., Inc. 401(K) Profit Sharing Plan*, 243 Ariz. 150, ¶ 11 (App. 2017).

¶5　　　　Maricopoly contends that excess proceeds generated by the foreclosure sale must be paid to it as assignee of the senior lienholder U.S. Bank. It maintains that under the doctrine of equitable subrogation,[2] excess proceeds from the foreclosure sale of a junior lien flow up to the senior lienholder despite the senior lien not being extinguished by the foreclosure because § 33-727(B) states "other liens" shall be paid in their order, without other qualification. Durable and amicus curiae—the Arizona Department of Housing—argue Maricopoly's interpretation of § 33-727(B) is contrary to the overarching statutory scheme, the Restatement of Property, and settled Arizona law. We agree.

¶6　　　　Our legislature's wording in § 33-727(B) may give some purchase to Maricopoly's interpretation because it "does not limit excess

---

Maricopoly and U.S. Bank assigning "any claim to excess proceeds . . . that U.S. Bank may have had" to Maricopoly, nunc pro tunc to June 19, 2020.

　　　　[2]"Equitable subrogation is 'the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt.'" *Sourcecorp, Inc. v. Norcutt*, 229 Ariz. 270, ¶ 5 (2012) (quoting *Mosher v. Conway*, 45 Ariz. 463, 468 (1935)).

proceeds distribution to junior lienholders" and instead appears to apply to all other liens. But when read in conjunction with related statutes, it is clear that in a foreclosure by a junior lienholder, a senior lienholder's rights are not impacted by the sale. *See* A.R.S. § 12-1562(A) (In an execution of judgment sale, "[a]ny excess in the proceeds over the judgment and costs shall be returned to the judgment debtor unless otherwise directed by an order of the court."); A.R.S. § 33-455 (a conveyance made by virtue of a decree or judgment passes "absolute title to the property to the purchaser thereof, but the conveyance shall not affect the right, title or interest of any person other than the parties to the conveyance, decree or judgment, and those claiming under them").[3]

¶7 The Restatement (Third) of Property (Mortgages) (1997), which Arizona courts follow absent contrary authority, *In re Krohn*, 203 Ariz. 205, ¶ 18 (2002), provides added support for our interpretation of § 33-727(B). Section 7.4 states that surplus proceeds are "applied to liens and other interests *terminated by the foreclosure* in order of their priority and the remaining balance, if any, is distributed to the holder of the equity of redemption."[4] (Emphasis added.) And Comment c explicitly rejects Maricopoly's argument:

> Senior lienors have no lien claim to a surplus
> produced by the foreclosure of a junior

---

[3]Analogs to § 33-727(B) in the trustee sale statutes also support our interpretation. Section 33-812, A.R.S., provides that proceeds of a trustee sale are applied first to payment for costs and expenses of exercising the sale, then to the payment of the contract secured by the trust deed, next to the payment of "all other obligations provided in or secured by the trust deed and actually paid by the beneficiary before the trustee's sale," then to homeowners' associations with subordinate liens, and finally to "the junior lienholders or encumbrancers in order of their priority as they existed at the time of the sale." Any excess proceeds after these payments "shall be made to the trustor." § 33-812(A)(5). Under A.R.S. § 33-811(E), a conveyance via trustee sale is made "clear of all liens, claims or interests that have a priority subordinate to the deed of trust and shall be subject to all liens, claims or interests that have a priority senior to the deed of trust." Maricopoly has provided no rationale for why a senior lienholder should have a right to surplus funds resulting from a judicial execution sale but not from a trustee sale.

[4]"The holder of the equity of redemption" is defined as the mortgagor. *See Equity of Redemption,* Black's Law Dictionary (11th ed. 2019).

mortgage. Unlike their junior lien counterparts, their liens are unaffected by foreclosure and remain on the foreclosed real estate. They remain free to foreclose on the real estate, and thus there is no justification for transferring any part of their liens to the junior foreclosure surplus.

¶8 This rationale is also echoed in Arizona case law. *See Midyett v. Rennat Props., Inc.*, 171 Ariz. 492, 494-95 (App. 1992) (trial court "could not have ordered that the surplus be applied to the prior lien" because the surplus must "be paid to the judgment debtor on whose behalf the property was sold to satisfy the judgment or his creditors with liens subsequent to the judgment" (citation omitted)). And in *Mid Kansas Federal Savings and Loan Ass'n of Wichita v. Dynamic Development Corp.*, our supreme court recognized that "the purchaser at a foreclosure sale of a junior lien takes subject to all senior liens." 167 Ariz. 122, 130 (1991). In fact, "the purchaser is presumed to have deducted the amount of the senior liens from the amount he bids for the land." *Id.*; *see also Hanley v. Pearson*, 204 Ariz. 147, ¶ 13 (App. 2003) (at trustee sale, "[t]he purchaser is expected and presumed to take into account existing senior liens in calculating an appropriate bid for the property"); *Fay v. Harris*, 64 Ariz. 10, 12 (1945) ("The purchaser [at an execution sale] is not entitled to an offset because of a lien on the property purchased.").

¶9 And while not controlling, we nevertheless find apposite the reasoning in *United States v. Sage*, 566 F.2d 1114 (9th Cir. 1977). In that case, the purchaser at a bankruptcy sale paid off a senior lien on the foreclosed property and claimed to have received an equitable assignment of the senior mortgage as a result of the payoff, with priority for payment of excess proceeds ahead of the former owner. 566 F.2d at 1114. The Ninth Circuit Court of Appeals rejected this argument, explaining, "Foreclosure affects the rights of all mortgagees junior to the foreclosing mortgagee and requires them to look to the proceeds for satisfaction, but it has no effect whatsoever upon the interest of senior mortgagees . . . ." *Id.* at 1114-15. Such a result

> embodies the ancient rule that "upon sale under a junior mortgage, the surplus belongs to the mortgagor, and is not applied to the satisfaction of the prior mortgage; for the equity of redemption which was sold belongs to the mortgagor, and the presumption of the law is,

> that the purchaser of it only pays for its worth
> in excess of the prior mortgage debt."

*Id.* at 1115 (quoting L. Jones, Law of Mortgages § 2186 (1928)).

**¶10**　　　　　Finally, because Maricopoly relies on an unpublished memorandum decision issued by this court in *Matt Steinmetz, PLLC v. Everyone Wins, LLC* and contends the trial court should have applied it, we briefly address that case. There, we affirmed the trial court's decision to allow a senior lienholder to intervene and recover excess proceeds in a judicial sale following a junior homeowner association lien foreclosure. *Matt Steinmetz, PLLC v. Everyone Wins, LLC*, No. 1 CA-CV 17-0549, ¶¶ 1-4 (Ariz. App. June 19, 2018) (mem. decision). But our analysis focused narrowly on various anti-deficiency statutes we found inapplicable. *Id.* ¶¶ 8-11. The parties did not cite the Restatement § 7.4, nor did we discuss the incongruity between our result in that case with the results under the trustee sales statutes, instead rejecting such arguments as "inapplicable." *Id.* ¶ 10. In any event, that decision is not controlling nor particularly persuasive here in light of our analysis set forth above. *See* Ariz. R. Sup. Ct. 111(c)(1)(C) ("Memorandum decisions of Arizona state courts are not precedential and such a decision may be cited only . . . for persuasive value . . . .").

## Conclusion

**¶11**　　　　　In sum, under § 33-727(B), liens and other interests terminated by a foreclosure attach to the surplus in order of the priority they enjoyed prior to the foreclosure. Lienholders with higher priority to the foreclosing lienholder who remain unaffected by the foreclosure have no right to the excess proceeds. Accordingly, as relevant here, the successful bidder at a foreclosure sale who takes the property subject to a senior lien has no right to the excess proceeds that the junior lien's foreclosure generates. We thus reject the trial court's contrary interpretation; nevertheless, the court correctly awarded Durable the excess proceeds from the sale, and we therefore affirm its order. *See Starr v. Ariz. Bd. of Fingerprinting*, 252 Ariz. 42, ¶ 8 (App. 2021) ("We are not bound by the superior court's legal conclusions and may affirm the court if it reached the correct result even if it did so for different reasons."). In light of our resolution of this issue as a matter of law, we need not address Maricopoly's equitable subrogation arguments. *See McDermott v. McDermott*, 129 Ariz. 76, 77 (App. 1981) ("Whenever the rights of parties are clearly defined and established by statutory provisions, equity follows the law."). Regardless of whether Maricopoly had an assignment from U.S. Bank, the senior lienholder here is not entitled to the excess proceeds.

**Disposition**

¶**12**       The trial court's order granting Durable's request for payment of the excess proceeds resulting from the foreclosure sale is affirmed.[5]

---

[5]Maricopoly requests an award for attorney fees it incurred to oppose the amicus brief pursuant to Arizona Rules of Civil Appellate Procedure 21 and 25.  Maricopoly has failed to state the authority for such an award under Rule 21, and we do not find the amicus brief was frivolous or "filed solely for the purpose of delay."  Accordingly, Maricopoly's request is denied.